408 So.2d 330 (1981)
Florence Comeaux PLACIDE, Plaintiff-Appellee,
v.
Herbert PLACIDE, Jr., Defendant-Appellant.
No. 8500.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
*331 Simon & Dauterive, J. Minos Simon, Lafayette, for defendant-appellant.
Roy, Forrest & Lopresto, Alex A. Lopresto, III, New Iberia, for plaintiff-appellee.
Before CULPEPPER, CUTRER and STOKER, JJ.
STOKER, Judge.
When a husband is tortiously injured during marriage and the parties become judicially separated, to what portion of the husband's recovery in his tort action is the wife entitled in a partition of the community property? The trial court decided the case under Louisiana Civil Code article 2402 and 2334 as these articles formerly read.[1] The trial court held the former wife was entitled to one-half of the tort recovery.
In West v. Ortego, 325 So.2d 242 (La. 1975) the Louisiana Supreme Court considered this question with reference to a husband's recovery of workmen's compensation *332 benefits. The Supreme Court concluded that Articles 2334 and 2402 were not enacted with the issue in question in mind. It further concluded "that there is no positive law resolving the issue before us. Resort to equity, i. e., to natural law and reason, is therefore in order." The court invoked LSA-C.C. art. 21. It then pronounced the following rule:
"Applying the foregoing principles, we conclude that where a husband's settlement monies, acquired after dissolution of the community, but based upon a pre-dissolution, accident-related cause of action, compensate for both pre-dissolution and post-dissolution losses, that portion of the settlement which compensates for post-dissolution losses falls into the separate estate of the husband.
"Ascertaining the post-dissolution portion of the settlement in the case at hand is quite simple in view of the fact that the bulk of the prospective compensation settlement represents weekly fixed sums. Ascertaining the respective portions of a non-workmen's compensation personal injury settlement (or jury verdict, for that matter), while not quite as simple, is nonetheless possible."
In the case before us the trial court held that what the Louisiana Supreme Court suggested in the last sentence quoted above, contrary to being possible, was "obviously impossible" of determination in this case. It so held on the ground that the personal injury award to the husband in this case was not itemized by the jury. The trial court said: "There is no way to discern what portion of the jury's verdict was meant to compensate for `post-dissolution losses'." As a result the trial court held the entire recovery was community property, one-half of which belonged to the plaintiff wife. The defendant husband appealed. We amend in favor of the husband.
A constitutional issue raised below appears to have been abandoned in this appeal as it has not been argued before us.

FACTS
The facts of this case are not in dispute. Plaintiff-appellee, Florence Comeaux Placide, and defendant-appellant, Herbert, Placide, Jr., were married on December 24, 1970, and Herbert was injured on June 12, 1975. As a result of that injury Herbert recovered a judgment in a jury trial which was affirmed in this court with amendment which resulted in a judgment in his favor of $250,000 in general damages, $47,733 in past lost wages, and stipulated medical expenses of $17,365. Placide v. Jay, 378 So.2d 473 (La. App. 3rd Cir. 1979). The trial court described the chronology of events as follows:
1. December 24, 1970marriage of plaintiff and defendant.
2. June 12, 1975date of injury sustained by the defendant herein, Herbert Placide.
3. June 3, 1976lawsuit filed by Herbert Placide for injuries sustained as a result of the above mentioned accident.
4. April 21, 1977community of acquets and gains dissolved (Judgment of Separationcommunity terminated as of date petition filed.)
5. December 15, 1978Jury verdict in favor of Mr. Placide in the above mentioned suit in the amount of $540,000.00. (This verdict was subsequently reduced by the Third Circuit Court of Appeal.)
6. April 22, 1980The instant lawsuit was filed.
The jury which heard appellant's case in Placide v. Jay, supra, awarded him a total of $540,000 in answer to interrogatories on a verdict form furnished to them as shown by a copy admitted as evidence and filed in the record of the present case. Tr. 48. There was no apportionment between general and special damages.
The trial court in its reasons for judgment explained that because the jury award was not itemized it would be speculative to attempt to determine how much of the award under the formula provided by West v. Ortego, supra, was pre-dissolution loss and how much was post-dissolution loss. Therefore, it reasoned that the entire *333 amount of the judgment should be considered community property. Appellant argues on the other hand that there is a rational basis for apportionment of the recovery into a portion which is community property and a portion which is appellant's separate property under the West v. Ortego formula.
According to a stipulation in the record (Tr. 56) Herbert Placide, Jr., realized $361,894.30 from the judgment in his tort suit including principal and interest. This gross recovery was reduced to a net recovery of $225,713.71 by the payment of the contingency attorney fees and expenses of the law suit. It was further stipulated that one-half of the net recovery, $112,856.86, was deposited with E. F. Hutton & Company and that Florence Comeaux Placide would be paid from this deposit whatever amount, if any, was determined by the court to be due her including principal and interest. Also the parties stipulated that the trial court's first judgment (rendered February 25, 1981) should be reformed and modified so as to reflect the stipulations, and this was done in a second judgment signed April 7, 1981. Thereafter, defendant appealed.
Appellant proposes an apportionment in his brief which reflects the amount paid to appellant's workmen's compensation carrier under an intervention in the tort suit. The stipulation indicates this amount was $36,110.24.

IS THERE A RATIONAL BASIS FOR APPORTIONMENT OF THE TORT ACTION RECOVERY?
The trial court focused on the $540,000 injury award which covered both general and special damages without any allocation of the total to any category. It also felt that to make an allocation in this particular suit required attempting to read the jury's mind which it thought was impossible. The trial court erred in adopting these approaches. As a first predicate we note that the jury award and trial court judgment based upon that award is not the actual award. The award to defendant Herbert Placide, Jr. is that award made in the judgment of this Court of Appeal, namely $250,000 in general damages, and special damages of $47,733 in past loss wages and $17,365 in medical expenses. In addition we do not think it is necessary to speculate on the jury's thoughts on the matter to make a rational and equitable apportionment of the recovery between community and separate estates. An apportionment can be made by the court itself on the basis of equity without basing the apportionment on an inquiry into what the jury might have thought.
Appellant urges that a proper apportionment of the special damages may be based on the relationship of the time elapsing from the date of the accident (June 12, 1975) until the date of dissolution of the community estate (April 21, 1977) and the time elapsing from the date of the accident until the date of the jury verdict (December 15, 1978). These periods are 1.86 years and 3.5 years. Therefore, the period from accident to dissolution of the community is 53% of the time from accident to the date of the jury verdict. Appellant suggests that the community estate should be allowed no more than 53% of the lost wages and medical expenses.
With respect to the general damage award of $250,000 appellant suggests his life expectancy should be a factor. He then urges that the community estate should be entitled to no more than the percentage which 1.86 years bears to the number of years which represent appellant's life expectancy.
The case of West v. Ortega, supra, dictates that we resort to equity to apportion monies acquired after dissolution of the community for damages awarded in compensation for an accident which occurred before the dissolution of the community when the award covers both pre-dissolution and post-dissolution losses. We find that there is sufficient evidence before us to permit an equitable apportionment of the damages awarded to appellant.
The court in Placide v. Jay, supra, outlined the damages to the appellant as follows:

*334 "After the accident on June 12, 1975, plaintiff was first seen by Dr. Roy Landry who found plaintiff, then 27 years of age, suffering moderately severe pain and swelling from an injury at the base of the penis. No injury to the back was diagnosed by Dr. Landry. He referred plaintiff to urologists for a possible injury to the urethra, but tests indicated healing had begun and plaintiff was discharged from the hospital on June 15, 1975.
"Plaintiff saw his family physician, Dr. G. D. Sagrera, on June 19, 1975, complaining of tenderness in his penis. Dr. Sagrera referred plaintiff to Dr. Blacham, a urologist.
"On June 30, 1975, plaintiff was examined by Dr. Spencer Walton, an orthopedic surgeon, who diagnosed a muscle strain in the low back. Plaintiff continued to see Dr. Walton for his back strain until April of 1976. There are no residuals of the back injury.
"Plaintiff was seen by Dr. Sagrera again on July 11, 1975 and July 22, 1975 for complaints or impotence, i. e., the inability to have an erection sufficient for penetration.
"On August 8, 1975, plaintiff began a long course of treatment by Dr. Brantly Scott, a urological surgeon in Houston, Texas. Dr. Scott specializes in impotency. He diagnosed that plaintiff was impotent. More specifically, Dr. Scott explained that the blow to the base of the penis left scar tissue which impaired the blood supply into the penis to the extent that plaintiff could not have a full erection. He recommended the only treatment available, a surgically implanted silicone-rubber prosthesis.
"On October 10, 1975, Dr. Scott surgically implanted this prosthesis. It consists of two cylindrically-shaped silicone-rubber cylinders, which are expansive. The cylinders are placed inside the erectile bodies of the penis. They are connected by tubes to a pump implanted in the scrotum. The pump is connected by tubing to a silicone-rubber fluid reservoir, which is placed in the abdomen near the bladder. When the patient wants to have an erection, he squeezes with his fingers the pump inside the scrotum a sufficient number of times to pump fluid from the reservoir into the cylinders in the penis. This procedure takes about five minutes. After completing intercourse, the patient then squeezes a valve, also in the scrotum, which allows the fluid to flow from the cylinders in the penis back into the reservoir in the abdomen.
"After the implant of the prosthesis and recovery from the initial surgery, plaintiff returned home and was able to have an erection. His wife testified they had intercourse two or three times a week, which was about the same as before the accident.
"In February of 1976, plaintiff erected his penis but was unable to deflate the cylinders because of a malfunction. He returned to Houston, where Dr. Scott replaced the prosthesis on February 24, 1976.
"In April of 1977, the prosthesis developed a leak. Plaintiff returned to Houston and Dr. Scott replaced it again. In August of 1977, there was a fourth surgical procedure to shorten a portion of the tubing, but the device was not replaced."
In the Placide v. Jay opinion this court found that the appellant was entitled to $250,000 in general damages and $65,098 in special damages. The special damages consist of $47,733 for past loss of wages, and $17,365 as the stipulated medical damages. The parties also stipulated that the entire award to the appellant at the time of the trial in the present suit was $225,713.71. This figure includes the principal and the interest accrued up to the time that the judgment was satisfied, but excludes the one-third contingency attorney's fees, the amount recovered by the compensation insurer, intervenor and the out-of-pocket expenses.

NET AMOUNTS TO BE APPORTIONED
By apportioning the interest, attorney's fees, and expenses between the general and special damages, we can arrive at workable *335 figures to distribute between pre-dissolution and post-dissolution losses.[2] The amount of $65,778.69 represents the interest added to the general damages of $250,000. From the sum of these two figures ($315,778.69) the attorney's fees of $105,246.31 and expenses of $2,799.91 are subtracted, leaving a total of $207,732.47. This figure represents the total award for general damages actually received by the appellant.
To the $65,098 awarded to the appellant for special damages, $17,128.25 is added for interest and the figures of $27,405.30, $729.07, and $36,110.64 are subtracted from the total, representing the attorney's fees, expenses, and the intervenor's claim, respectively. The intervenor's claim is subtracted from the special damages because the intervenor paid compensation to the appellant for lost wages and medical damages. This leaves a total of $17,981.24 in special damages which the appellant actually realized.
We now must decide what proportion of the figures we have arrived at for special and general damages falls into the community property of the parties to this suit. The remainder is the separate property of the appellant.

APPORTIONMENT OF SPECIAL DAMAGES
With respect to the special damages, we find that, according to the evidence adduced at trial, the bulk of that award should be considered community property. The special damages are divided into compensation for past loss of wages and the medical expenses incurred by the appellant. Dr. F. Brantley Scott, who performed the implant surgery on appellant, testified in his deposition that he recommended that the appellant return to work in August of 1975. Dr. Spencer Walton, who treated appellant for back strain resulting from his accident, testified that the appellant's back condition had improved enough for him to return to work as of March of 1976. The community was dissolved on April 21, 1977. Therefore, the lost wages compensation is solely for damages incurred before dissolution of the community. Hence, the entire amount awarded to appellant for lost wages should be considered to be community property.
Furthermore, the only item of the medical damages incurred by the appellant after dissolution of the community was for the surgical procedure performed in August of 1977. The other three surgeries and numerous visits to various doctors occurred before the community was dissolved. The amount of $17,365 was stipulated by the parties as the total amount of medical damages incurred by the appellant, but that figure was not broken down for each surgery. Therefore, we cannot exactly determine the cost to appellant of the final surgery. However, we will estimate the amount of $500 to account for the post-dissolution medical damages from the fourth surgery to appellant. This leaves a remainder of $17,481.24 from the total special damages of $17,981.24. This remainder will be apportioned to community property.

APPORTIONMENT OF GENERAL DAMAGES
As to the award for general damages, appellant contends that the general damages were awarded to him to compensate for a loss which he will suffer for his entire lifetime. On the other hand, appellee in her brief argues that the general damages included a portion to compensate appellant for temporary pain and suffering incurred for the most part before the dissolution of the community. All but the last surgical procedure was performed during the existence of the community between appellant and appellee. It is clear that at least some part of the general damages awarded to appellant was intended to compensate him for his pain and suffering resulting from the injury to his penis and back and from the four surgeries. It is equally clear, however, that the greater part of the award for general damages was intended to compensate the appellant for *336 the loss of normal sexual function which he will suffer for the remainder of his life. Although there was evidence at trial that the appellant could perform sexual intercourse as often after the accident as he did before, there was also evidence that the use of the prosthesis was a source of embarrassment and inconvenience to the appellant and that intercourse after the implant was not very satisfactory. Accordingly, on an equitable basis, we find that the general damages of $207,713.71 compensates the appellant for $20,000 of pre-dissolution losses and $187,713.71 of post-dissolution losses. That portion which compensates for post-dissolution losses falls into the separate estate of the husband, and that portion for pre-dissolution losses falls into the community.

CONCLUSION
As we have found above, $17,481.24 from the award for special damages, and $20,000.00 from the award for general damages should be considered to be community property. The total of these two figures is $37,451.24. Therefore, the appellee is entitled to half of this amount, or $18,740.62, as her share of the community property. We will amend the trial court's judgment accordingly.
For the foregoing reasons, it is hereby ordered, adjudged and decreed that judgment of the trial court be affirmed in all particulars except insofar as it awards plaintiff-appellee, Florence Comeaux Placide, the full amount of $112,856.86 on deposit with E. F. Hutton & Company with accrued interest. The judgment of the trial court is hereby amended and it is ordered, adjudged and decreed that of the amount on deposit plaintiff-appellee Florence Comeaux Placide is awarded the sum of $18,740.62 with interest accrued on that amount, and defendant-appellant is awarded the amount of $94,116.24 with accrued interest on that amount. As thus amended the judgment of the trial court is affirmed.
The cost of this appeal are assessed equally to appellee and appellant.
AMENDED AND AFFIRMED AS AMENDED.

 APPENDIX
 TABLE OF APPORTIONMENT
General Damages $ 250,000.00
 + 65,778.69 interest
 __________
 315,778.69
 - 105,246.31 attorney's fees
 __________
 210,532.38
 - 2,799.91 interest
 __________
 $207,732.47
Special Damages $ 65,098.00
 + 17,128.25 interest
 _________
 82,226.25
 - 27,405.30 attorney's fees
 _________
 54,820.95
 - 729.07 expenses
 _________
 54,091.88
 - 36,110.64 intervenor's claim
 _________
 $ 17,981.24
 $ 207,732.47 general damages
 + 17,981.24 special damages
 ___________
 $ 225,713.71 amount stipulated

NOTES
[1] The issues involved in this case are now regulated by LSA-C.C. art. 2344 as amended, effective January 1, 1980. As the accident which befell Herbert Placide, Jr. occurred prior to the effective date of this amendment, former Articles 2402 and 2334 apply in this case.

As they formerly existed, these articles provided:
"Art. 2402. This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.'"
"Art. 2334. The property of married persons is divided into separate and common property.
Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.
Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent."
[2] See Table of Apportionment appended to this opinion.