794 P.2d 1145

**Phyllis M. BOWLDEN,
Plaintiff–Respondent,**

v.

**Taylor R. BOWLDEN,
Defendant–Appellant.**

No. 17934.

Court of Appeals of Idaho.

Oct. 3, 1989.

Review Granted Jan. 19, 1990.

Robert H. Remaklus, Cascade, for defendant-appellant.

Gregory Pittenger (argued), Killen, Pittenger & Kerrick, McCall, for plaintiff-respondent.

SWANSTROM, Judge.

This is an appeal from a district court's appellate decision affirming the magistrate's finding that social security payments received during marriage are community property. For reasons explained below, we reverse the district court's decision upholding the magistrate's judgment.

The facts are as follows. The parties to this action were married on May 31, 1971, and divorced on June 28, 1988. The Bowldens had no children of this marriage. During the course of his employment, Taylor Bowlden contributed to or had deducted from his salary F.I.C.A. taxes which were paid into the Social Security Administration. Beginning in March of 1981, Taylor Bowlden began receiving monthly payments under the Social Security, Old Age, Survivors and Disability Insurance Program (OSADI). Because the marital community had sufficient outside sources of income to support the couple, the benefits received from social security were deposited in several checking and savings accounts. At the time of the dissolution of the marriage, the deposited social security benefits totalled $76,476.00. Taylor Bowlden claims these benefits are his sole and separate property. His ex-wife, Phyllis Bowlden, asserts that these payments are community property.

The sole issue on appeal is whether federal law preempts state community property law under the Supremacy Clause of the United States Constitution. U.S. Const. Art. 6, cl. 2. Since this issue requires a determination of law the standard is one of free review.

The United States Supreme Court has said that review under the Supremacy Clause is limited to a determination whether Congress has "positively required by direct enactment" that state law be preempted. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979), *quoting Wetmore v. Markoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904). Before a state law governing domestic relations will be overridden, it "must do 'major damage' to 'clear and substantial' federal interests...." *Hisquierdo,* 439 U.S. at 581, 99 S.Ct. at 808, *quoting United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966). The applicable federal statute is 42 U.S.C. § 407 (Supp.1987). The language is all-in-

clusive: "[N]one of the *moneys paid* or *payable* ... under this subchapter shall be subject to execution, levy, attachment, garnishment, or *other legal process ....*" (Emphasis supplied.)

In 1973, the United States Supreme Court interpreted 42 U.S.C. § 407 in *Philpott et al. v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973). The Court was faced with the issue of whether social security disability benefits paid retroactively to a beneficiary were subject to attachment by, and reimbursement to, the State of New Jersey. In an opinion by Justice Douglas, expressing the unanimous view of the Court, it was held that the Social Security Act in § 407 bars the State of New Jersey from reaching the federal disability payments paid to Wilkes. The Court further stated that § 407 "imposes a broad bar against the use of *any legal process* to reach *all social security benefits.*" *Philpott,* 409 U.S. at 417, 93 S.Ct. at 592. (Emphasis supplied).

This court considers the holding in *Philpott* significant and analogous to the case under consideration. Both situations deal with social security benefits paid to a recipient. The fact that *Philpott* dealt with social security disability benefits and not OSADI benefits is not important for our analysis. The critical point is that the *Philpott* case rests its decision on the interpretation of the anti-attachment clause of the Social Security Act.

The anti-attachment clause of § 407 of the Social Security Act is similar to the anti-attachment clause of the Railroad Retirement Act. 45 U.S.C. § 231m (Supp. 1987). The latter statute was interpreted by the United States Supreme Court in *Hisquierdo.* In the *Hisquierdo* case, the Court was faced with determining whether Congress intended to prevent a community property state from recognizing a spouse's community interest in a Railroad Retirement Act retirement plan. The Court, quoting from the *Philpott* case, stated that anti-attachment provisions in general were intended to insure that the benefits actually reach the beneficiary. The Court determined that these benefits are protected

from all legal process notwithstanding any other law of any state. The Court concluded by saying that 45 U.S.C. § 231m (the anti-attachment provisions) preempts all state law that stands in its way.

Effective January 1, 1975, Congress adopted an exception to § 231m and similar provisions in all other federal benefit plans. The Social Security Act was amended by adding a new provision, 42 U.S.C. § 659(a) (1982), to the effect that, notwithstanding any contrary law, federal benefits may be received to satisfy a legal obligation for *child support* or *alimony.* In 1977, Congress added to the Social Security Act a definitional statute, 42 U.S.C. § 662(c) (1982), which relates to § 659(a) and defines the term *alimony.* Section 662(c) states specifically that "alimony":

> does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.

*Hisquierdo,* 439 U.S. at 577, 99 S.Ct. at 806.

The United States Supreme Court observed it was "logical to conclude that Congress, in adopting § 462(c) [42 U.S.C. § 662(c)], thought that a family's need for support could justify garnishment, even though it deflected other federal benefit programs from their intended goals, but that *community property claims,* which are not based on need, could not do so." *Hisquierdo,* 439 U.S. at 587, 99 S.Ct. at 811 (emphasis supplied). The Court concluded that treating railroad retirement benefits as community property would conflict with § 231m of the Railroad Retirement Act thus causing the kind of injury to federal interests that the Supremacy Clause forbids.

The rationale of the holding in *Hisquierdo* is equally applicable to OSADI benefits paid under the Social Security Act. This is because both statutes have many similarities. For example, the two statutes operate in substantially the same manner. Taxes are required to be paid by both the

employer and employee. These taxes are paid out of the employee-spouse's earnings which would normally cause the retirement benefits to be classified as a community asset. Such is the case in private pension plans. However, this result is not applicable when dealing with Social Security or Railroad Retirement benefits. These retirement plans are funded from compulsory "taxes" which create only a general public benefit and not a legally recognized property or contract right. *See Flemming v. Nestor,* 363 U.S. 603, 610, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960). Congress may alter, and even eliminate, them at any time.[1] In *Sherry v. Sherry,* 108 Idaho 645, 701 P.2d 265 (Ct.App.1985), we adopted this rationale by holding that future OSADI benefits under the Social Security Act are not a divisible community asset. We believe that this determination applies equally well to OSADI benefits already received during marriage.

Another similarity between the two federal statutes is the anti-attachment clause. As mentioned earlier, these clauses were intended to insure that benefits actually reach the beneficiary. In the case of the Social Security Act, the intended beneficiaries are the worker, spouse, dependent children, and even the divorced spouse of the retired employee. The Railroad Retirement Act is substantially the same with the exception of a divorced spouse. Under the Railroad Retirement Act, benefits are terminated upon divorce. 45 U.S.C. § 231d(c)(3) (1982). This distinction between the Railroad Retirement Act and the Social Security Act is insignificant. As declared in *Hisquierdo,* the choice was deliberate. Congress intentionally failed to provide benefits for divorced spouses under the Railroad Retirement Act because of the perilous financial condition of the Railroad Retirement account, and the need to devote funds to other purposes. The benefits provided to the worker's family are in addition to the primary benefits which the worker receives and in no way affect those primary benefits. In the case of *In re Marriage of Hillerman,* 167 Cal.Rptr. 240, 109 Cal.App.3d 334 (1980), the court considered *Hisquierdo* for guidance in reaching its holding. The California court stated that "the enactment of a total OSADI family benefit scheme does, in fact, suggest to us the presence of a similar congressional intent to replace state family law as it applies to Social Security." *In re Marriage of Hillerman,* 167 Cal.Rptr. at 245.

We agree by concluding that Congress has "positively required by direct enactment" that state law be preempted. The treatment of social security benefits paid during marriage as community property would do "major damage" to "clear and substantial" federal interests. This Court concurs with the conclusion reached by the California court in the case of *In re Marriage of Hillerman.* That court observed that "it appears Social Security has been structured so as to replace the diverse state law in the area (community as well as traditional domestic law) with a uniform federal system of distribution." *In re Marriage of Hillerman,* 167 Cal.Rptr. at 246. Therefore, we hold that Taylor Bowlden's social security benefits are his separate property.

We recognize that our decision here does not necessarily require a finding by the trial court that all social security benefits received by Taylor Bowlden have remained his separate property. This determination is still an issue to be decided by the trial court, based upon existing or additional evidence concerning commingling of assets, tracing and like matters.

Accordingly, we reverse the district court decision affirming the magistrate's judgment. We remand the case to the district court with direction to vacate the judgment and to remand the case to the

---

1. In *Hisquierdo* the Court noted:

The Social Security Act specifically provides: "The right to alter, amend, or repeal any provision of this [Act] is reserved to the Congress." ... U.S.C. § 1304.... While the Railroad Retirement Act does not expressly incor-porate that very language, it definitely does so indirectly, because the minimum Railroad Retirement Act benefit is the benefit that would have been received under the Social Security Act. See 45 U.S.C. § 231b(a)(1).

439 U.S. at 575, n. 6, 99 S.Ct. at 805, n. 6.

magistrate division for further proceedings consistent with this opinion. No attorney fees on appeal. Costs to appellant.

WALTERS, C.J., and BENGSTON, J. pro tem., concur.