644 So.2d 733 (1994)
Margie B. FOUNTAIN
v.
Donald L. FOUNTAIN.
No. CA 93 2176.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
*736 Maria O'Byrne Stephenson, Lisa Matthews, New Orleans, for appellant Donald L. Fountain.
Ernest Hartenstine, Hammond, for appellee Margie B. Fountain.
Before CRAIN, FOIL and WHIPPLE, JJ.
WHIPPLE, Judge.
This is an appeal by Don Fountain from a judgment of the trial court establishing a joint custody plan, ordering Mr. Fountain to pay child support and permanent alimony and partitioning certain community assets. For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
Margie Blount Fountain and Donald L. Fountain were married on October 4, 1980 and have one child, Angela Rae Fountain. The parties physically separated on April 29, 1992.
On May 8, 1992, Mrs. Fountain filed a petition for divorce, pursuant to LSA-C.C. art. 102, and for the determination of incidental matters. Thereafter, on September 21, 1992, the parties stipulated that the custody of their minor child, Angela, would be shared jointly, with Mrs. Fountain as the domiciliary parent. The parties also stipulated that Mr. Fountain would pay Mrs. Fountain $1,000.00 per month in alimony pendente lite and $876 per month in child support.
By judgment dated October 7, 1992, the trial court awarded joint custody in accordance with the parties' stipulation. However, the Fountains were unable to agree upon a joint custody plan. The court further ordered that the parties and their daughter submit to counseling and evaluation by Dr. Ann Goodrich, a psychologist, to assist the court in formulating an appropriate joint custody and visitation arrangement. The judgment also ordered Mr. Fountain to pay Mrs. Fountain $1,000.00 per month as alimony pendente lite and $876.00 per month as child support, in accordance with the parties' stipulation.
On November 2, 1992, Mr. Fountain filed a petition for divorce based on the parties having lived separate and apart for six months, in accordance with LSA-C.C. art. 103(1). Mrs. Fountain reconvened, seeking permanent alimony and judicial partition of the community property.
Trial in this matter was held March 15, 1993. After trial, a judgment of divorce was rendered on Mr. Fountain's petition, *737 continuing the alimony and child support order and implementing a temporary visitation schedule pending the court's decision on the issues of visitation, permanent alimony and partition of the community.
On April 15, 1993, the trial court signed a judgment addressing the issues which had been taken under advisement. The judgment ordered Mr. Fountain to pay Mrs. Fountain permanent alimony in the amount of $1,000.00 per month and granted Mr. Fountain visitation on alternate Sundays from 9:00 a.m. until 5:00 p.m., to be supervised by Loren or Shirley Fountain, Angela's paternal grandparents, until further orders of the court. The judgment also awarded Mrs. Fountain the sum of $84,261.00, with interest from date of judgment, as her half of the amount recovered by Mr. Fountain in a personal injury settlement for loss of community wages. The judgment further awarded Mrs. Fountain one-half of all interest received by Mr. Fountain on the settlement proceeds prior to termination of the community, with legal interest on that sum from November 2, 1992.
From this judgment, Mr. Fountain appeals, assigning the following as error:
(1) the trial court abused its discretion in limiting visitation in an extreme manner and in failing to order that the parties undergo counseling;
(2) the trial court abused its discretion in awarding Mrs. Fountain permanent alimony;
(3) the trial court erred as a matter of law in failing to deduct collateral sources of income received by Mr. Fountain after his accident from Mrs. Fountain's claim for her portion of lost community wages;
(4) the trial court erred as a matter of law in failing to deduct attorney's fees and expenses of 36% from Mrs. Fountain's portion of lost community wages;
(5) the trial court erred as a matter of law in failing to reimburse Mr. Fountain for one-half of separate funds he expended to pay community debts; and
(6) the trial court erred in assessing all costs of the trial court proceedings to Mr. Fountain.

RESTRICTION OF VISITATION

(Assignment of Error No. 1)
In his first assignment of error, Mr. Fountain contends that the trial court erred in unreasonably restricting his visitation privileges and in failing to order Mrs. Fountain to undergo professional counseling to resolve her bitterness toward Mr. Fountain.[1] In essence, Mr. Fountain argues that the trial court should have implemented all of the recommendations of Dr. Goodrich, which included supervised visitation for every other weekend and counseling for the parties. Mr. Fountain is not requesting unsupervised visitation.
Much discretion is vested in the trial court in determining times and conditions under which a parent may have access to his child. Steagall v. Steagall, 442 So.2d 732, 735 (La.App. 1st Cir.1983). The trial court's judgment will not be disturbed absent an abuse of that great discretion. Smith v. Smith, 615 So.2d 926, 931 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993); Reynier v. Reynier, 545 So.2d 663, 665 (La.App. 5th Cir.1989).
The record herein shows that Mr. Fountain, who now resides in Mississippi, was involved in a work accident on September 21, 1987, which resulted in a serious closed head injury. As a result of the head injury, Mr. Fountain has suffered from personality changes and outbursts of temper, although these outbursts have improved in frequency and intensity. Moreover, Mr. Fountain admitted that he is an alcoholic. Despite his claim that he no longer consumes alcoholic beverages, Mr. Fountain was involved in a head-on collision, while under the influence of alcohol and amphetamines, a mere three months before the trial of this matter.
Dr. Ann Goodrich, the psychologist to whom the court referred the family for evaluation, testified at trial as a court appointed *738 expert. Dr. Goodrich recommended that Angela visit her father every other weekend and that the visitation be supervised in part because of Mr. Fountain's drinking problem and in an effort to reduce Angela's anxiety level.
In written reasons for judgment, the trial court stated that "due to [Mr. Fountain's] alcoholism, drug abuse and change of personality traits, and the fear and reluctance of the child to visit her father in Mississippi[,]... it was in the best interest of the child that [Mr. Fountain] be allowed supervised, restrictive visitation only." Considering the problems from which Mr. Fountain suffers and the obstacles he must overcome, we find no abuse of discretion by the trial court in limiting Mr. Fountain's visitation. Although Dr. Goodrich did recommend visitation for the entire weekend, rather than on Sunday only, we find that the trial court had ample justification in further limiting visitation at this time. Slaughter v. Slaughter, 499 So.2d 1123 (La.App. 3rd Cir.1986).
Mr. Fountain further complains that the trial court abused its discretion in failing to order that the parties undergo counseling, in accordance with Dr. Goodrich's recommendations. Dr. Goodrich recommended that Mr. Fountain and Angela receive intermittent, joint counseling to reintroduce Angela into her father's life and that Mrs. Fountain undergo counseling to reduce her level of bitterness toward Mr. Fountain. The trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Enlow v. Enlow, 479 So.2d 650, 653 (La.App. 1st Cir.1985). Moreover, the trial court may accept an expert's opinions in whole or in part. Hoyt v. State Farm Mutual Automobile Insurance Company, 623 So.2d 651, 659 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La.1993). Apparently, the trial court, after hearing the parties testify, believed that counseling was not necessary in order to implement the custody and visitation schedule devised by the court. We find no error in this determination.
After careful review of the record, we conclude that the trial court did not abuse its great discretion in determining that Angela's best interests at this time required limited, supervised visitation with her father. This assignment of error lacks merit.

PERMANENT ALIMONY

(Assignment of Error No. 2)
Mr. Fountain contends that the trial court erred in awarding Mrs. Fountain permanent alimony. An appellate court cannot reverse a trial court's award of alimony unless the trial court has abused its discretion in making the award. Gitschlag v. Gitschlag, 593 So.2d 1331, 1334 (La.App. 1st Cir.1991). Mr. Fountain argues that Mrs. Fountain is not entitled to permanent alimony because: (1) Mrs. Fountain was at fault in causing the breakup of the marriage; (2) Mrs. Fountain should have obtained employment by the time of trial in order to provide sufficient means for her own support; and (3) Mr. Fountain does not have the means to pay permanent alimony.
Permanent alimony may only be awarded to a spouse who has not been at fault in the termination of the marriage. LSA-C.C. art. 112A(1). As used in LSA-C.C. art. 112, the word "fault" contemplates conduct or substantial acts of commission or omission by the claimant spouse violative of marital duties and responsibilities. To constitute fault sufficient to deprive a spouse of permanent alimony, the spouse's misconduct must not only be of a serious nature, but it must also be an independent contributory or proximate cause of the separation. Baxter v. Baxter, 607 So.2d 823, 825 (La.App. 1st Cir. 1992). As with any factual finding, a trial court's finding relative to the issue of fault is entitled to great weight and will not be overturned on appeal absent manifest error. Gitschlag, 593 So.2d at 1334.
Mr. Fountain contends that Mrs. Fountain was guilty of cruel treatment rising to the level of marital fault, in part because of Mrs. Fountain's screaming at Mr. Fountain on a daily basis without provocation. Verbal abuse can constitute cruel treatment if it is particularly vicious and persistent to the extent that it renders the common life insupportable. However, mutual incompatibility, *739 fussing and bickering cannot constitute cruel treatment. Lamb v. Lamb, 460 So.2d 634, 640 (La.App. 3rd Cir.1984), writs denied, 462 So.2d 1249, 1250 (La.1985).
The record before us establishes that prior to the couple's separation, they had several disputes. However, there is conflicting evidence as to the nature and extent of each party's participation in these arguments. While two nurses who worked for Mr. Fountain testified that they heard Mrs. Fountain raise her voice at her husband, another nurse, who was also a neighbor of the Fountains for a period of time, testified that she would hear Mr. Fountain "ranting and raving." Another nurse testified that she did not hear any arguments between Mr. and Mrs. Fountain. Mrs. Fountain testified that the parties separated because Mr. Fountain told her that he no longer loved her and wanted her to leave the matrimonial domicile.
After hearing all of the conflicting evidence, the trial court concluded that Mrs. Fountain's role in the arguments between the parties was not sufficient to establish such cruel treatment on her part as to render the parties' life together insupportable. We cannot conclude that the trial court was manifestly erroneous in its determination. Thus, the finding that Mrs. Fountain was not at fault in causing the breakup of the marriage will not be disturbed on appeal.
Mr. Fountain further contends that Mrs. Fountain is not entitled to permanent alimony because she is capable of finding employment and supporting herself. In order to be eligible for alimony after divorce, the spouse seeking alimony must be without sufficient means for maintenance or in necessitous circumstances. Alford v. Alford, 610 So.2d 923, 925 (La.App. 1st Cir.1992). The wife's earning capacity is a proper consideration in awarding alimony. However, while earning capacity is a consideration for awarding alimony, it is only one consideration, and taken alone, it is not a proper basis for rejecting an award of alimony. Alford, 610 So.2d at 925.
While earning capacity is a consideration in determining entitlement to and the amount of alimony after divorce, it does not necessarily follow that a spouse should be required to take employment of any nature immediately following divorce; difficulty in finding employment suitable for the spouse's age, training, and ability is also a proper consideration. Alford, 610 So.2d at 925.
The evidence of record discloses that at the time of trial in this matter, which was held less than one year after the parties separated, Mrs. Fountain was not employed, and her only sources of income were social security benefits, which would terminate upon divorce, and alimony pendente lite. Although Mrs. Fountain received $70,000.00 in settlement of her claim resulting from Mr. Fountain's accident, these funds were spent to build and furnish a home for herself and her minor daughter.
Mrs. Fountain has a high school degree and a one-year secretarial degree from a business college. In the past, Mrs. Fountain has held four secretarial or receptionist positions. She testified that she is "[a]ctively looking for employment" and desires to work for the State of Louisiana, which she has done in the past. In furtherance of this goal, Mrs. Fountain took the state civil service examinations in June of 1992, for the positions of "secretary 1 & related" and "secretary 2 & related."
While we recognize that Mrs. Fountain should not be given an unreasonable period of time to obtain employment or to pursue efforts in becoming self-supporting, we cannot conclude that the trial court erred in finding that as of the time of trial in this matter, Mrs. Fountain did not have sufficient means to support herself. See Ballanco v. Ballanco, 538 So.2d 1100, 1103-1104 (La.App. 5th Cir.1989).
Finally, Mr. Fountain argues that Mrs. Fountain is not entitled to permanent alimony, because he lacks sufficient means to pay her alimony. As a result of his work accident, Mr. Fountain received a large settlement, which before expenses and attorneys fees, totalled $2,450,000.00. Part of the sum was applied to a structured settlement, from which Mr. Fountain receives $6,775.00 per month. According to Mr. Fountain, the *740 amount he receives from this annuity will increase by one percent per year. Mr. Fountain's other income sources include Social Security payments in the amount of $875.00 per month and interest income of approximately $811.90 per month. Thus, Mr. Fountain's total monthly income is approximately $8,461.90.
Mr. Fountain contends that although his income is relatively high, his expenses, and in particular, his medical expenses for injuries resulting from the accident, are so high as to render him unable to pay alimony. In support of this contention, Mr. Fountain introduced a statement of his expenses exceeding his income by $36,764.00 over a ten-month period. However, we note that several expenses listed by Mr. Fountain are not ordinary expenses which he is likely to incur on a regular basis, such as attorney's fees in the amount of $10,061.00, which he related to the instant litigation, and other expenses listed which appear to be inflated.
Regarding medical expenses, Mr. Fountain listed the expense for nursing care for himself at $40,967.00 for the ten-month period involved. However, the testimony elicited from a number of licensed practical nurses and one registered nurse who have worked for Mr. Fountain established that the primary duties required of them included giving Mr. Fountain his medication, which he took orally, checking his vital signs once a day, and transporting Mr. Fountain to medical appointments and physical therapy, which tasks apparently can be performed by an aide, rather than a licensed practical nurse or a registered nurse. Thus, we find, as the trial court apparently found, that Mr. Fountain could likely reduce the expenses listed for attendant care.
Considering the foregoing, we cannot conclude that the trial court erred in determining that Mr. Fountain, who has an annual income of $100,000.00, has sufficient means to pay Mrs. Fountain alimony. We find no abuse of discretion in the award of $1,000.00 monthly. Mrs. Fountain presented evidence of monthly expenses of approximately $1,200.00, and the trial court accepted this figure. Thus, the award of $1,000.00 per month to Mrs. Fountain, who had no other means of income after the divorce, was within the trial court's discretion.
This assignment of error also lacks merit.

COLLATERAL SOURCES AFFECTING LOST COMMUNITY WAGES

(Assignment of Error No. 3)
In this assignment of error, Mr. Fountain contends that Mrs. Fountain's claim for her portion of settlement funds representing loss of wages attributable to the community should have been reduced to reflect collateral sources of income received by the community following Mr. Fountain's accident. Mr. Fountain contends that the community did not suffer a loss in the amount found by the trial court; that, in fact, "the community had more net funds available to it after the injury than it would have had if [Mr.] Fountain had continued working." Thus, he argues, the figure for loss of wages attributable to the community (and for which Mrs. Fountain was accordingly entitled to reimbursement for one-half) should have been reduced to account for temporary salary payments, maintenance and cure payments, Social Security payments and advances received from Mr. Fountain's attorneys. Mr. Fountain further contends that the amount stipulated as the total for wages he would have earned attributable to the community should have been reduced by the amount of taxes he would have been obligated to pay on that amount.
Louisiana Civil Code article 2344 provides as follows:
Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.
*741 The parties stipulated that had Mr. Fountain continued to work from the date of his injury through the date the community was terminated on November 2, 1991, he would have earned wages totaling $168,523.00. In making an award to Mrs. Fountain for her half of the settlement funds representing loss of community wages, the trial court simply divided the stipulated amount in half, without making any deductions for collateral sources received by the community to offset the loss or for the amount of taxes urged by Mr. Fountain as an offset.
At trial, Mr. Fountain proffered the testimony of Robert Mosher, a certified public accountant, regarding the amount of taxes that would have been owed on the stipulated earnings figure, absent the structuring of the settlement as a "lump sum" award. Mr. Mosher stated that the Fountains would have paid approximately $16,100.00 in federal income taxes, $12,600.00 in social security taxes, and $3,000.00 in state taxes on this amount. According to Mr. Fountain, the stipulated sum for earnings, i.e. the $168,523.32 figure used by the court, should have been reduced by $31,700.00, the total amount of taxes which would have been paid, for a net loss of $136,823.32. We find no merit in this claim.
As stated above, damages due to personal injuries sustained during the existence of a community by a spouse are separate property of that spouse. While the portion of damages attributable to loss of earnings that would have accrued after termination of the community are the separate property of the injured spouse, the portion of the damage award attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. LSA-C.C. art. 2344. In the instant case, the trial court rejected Mr. Fountain's claim that the stipulated amount for earnings during the community should have been reduced by the potential tax liability associated therewith, which his expert set forth as $31,700.00. In rejecting this offset for alleged tax expenses as claimed by Mr. Fountain, the trial court apparently found that no tax liability was paid or owed by the community.
As reflected in the settlement documents introduced at trial, the total amount of Mr. Fountain's settlement was $2,450,000.00, less related expenses as shown on an itemization attached to the settlement sheet. We note again that the settlement proceeds involved herein were in the form of a "lump sum" settlement, with no delineation between general and special damages. Moreover, the settlement was not categorized to show the amounts recovered for pre-dissolution and post-dissolution earnings; or whether the amounts recovered were based on gross or net earnings losses. More importantly, there is nothing in the record to show that any tax liability was incurred or anticipated in the settlement.
Thus, in the absence of more evidence showing the details of the factors negotiated in reaching the settlement or any showing by Mr. Fountain that the taxes were expenses incurred, paid or owed by the community, we find no error by the trial court in its refusal to apply the figure suggested by Mr. Fountain's accountant to offset the amount stipulated as earnings. See Roge v. Roge, 604 So.2d 721, 724 (La.App. 2nd Cir. 1992). The trial court's findings regarding the nature of the settlement and the amount of expenses incurred by the community in generating the settlement funds received as a result of the injury, as set forth in LSA-C.C. art. 2344 are factual determinations which will not be disturbed absent manifest error. Dawson v. Dawson, 610 So.2d 917, 919 (La.App. 1st Cir.1992). Thus, we find no error.
Considering next the reduced temporary salary payments received by Mr. Fountain after his injury, we conclude that these payments had the effect of reducing the actual loss of wages suffered by the community. Thus, the temporary salary payments, which totalled $21,150.00, should have been applied to adjust the amount the parties stipulated Mr. Fountain would have earned, absent injury, in determining the true loss suffered by the community and represented in the personal injury settlement.
*742 In Ellithorp v. Ellithorp, 509 So.2d 178, 180, 182 (La.App. 1st Cir.1987), this court cited with approval the trial court's method of establishing the amount of lost community earnings in apportioning proceeds of a personal injury settlement to account for community and non-community awards. In determining this amount, the trial court reduced the sum by the amount of "salary continuation" payments received by the injured husband. Likewise, inasmuch as Mr. Fountain received reduced salary payments after his injury, which funds were received by and benefitted the community, the community did not suffer a loss of community earnings in the amount employed by the trial court. Thus, the stipulated sum by of $168,523.00 should have been reduced by the $21,150.00 sum by which the community's loss has been offset to determine the amount of the settlement in compensation of community wages. We agree with Mr. Fountain that the trial court erred in failing to deduct this amount.[2]
We turn next to Mr. Fountain's claim that maintenance and cure payments received by him in the amount of $25,305.00 should have been deducted from the stipulated amount Mr. Fountain would have earned, absent injury. A seaman's right to maintenance and cure is an issue of general maritime law. Maintenance and cure is designed to provide the seaman with food and lodging when he becomes sick or injured. This obligation includes paying a subsistence allowance, reimbursing medical expenses actually incurred, and taking all reasonable steps to ensure that the seaman receives proper care and treatment. Comeaux v. Basin Marine, Inc., 640 So.2d 833, 836 (La.App. 1st Cir.1994); Jordan v. Intercontinental Bulktank Corporation, 621 So.2d 1141, 1153 (La.App. 1st Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
These payments are not in the form of salary compensation, and we do not believe that the receipt of these payments reduced the loss of wages suffered by the community. Thus, we find no error by the trial court in refusing to deduct this amount from the amount stipulated as wages Mr. Fountain would have earned absent injury.
Regarding social security payments and advances received from Mr. Fountain's attorneys, we likewise find no justification in concluding that these sums should be applied against the loss of wages suffered by the community. Entitlement to social security disability benefits requires the claimant to have been insured for those benefits within the meaning of the Social Security Act at the time of disability. 42 U.S.C. § 423(c). Mr. Fountain has cited no authority (nor have we been able to find any) to support the proposition that social security disability payments require an offset to the community's loss of wages in this accounting. Moreover, the advances received on Mr. Fountain's settlement were merely loans incurred and accounted for in the settlement documents and do not constitute a true reduction in the loss of wages suffered by the community.
Thus, we conclude that the amount the parties stipulated Mr. Fountain would have earned absent injury should have been reduced by the amount received as reduced salary payments. Accordingly, the actual loss of wages suffered by the community for the purpose of apportioning the settlement proceeds was $168,523.00 less $21,150.00, or $147,373.00. See Ellithorp, 509 So.2d at 180, 182.
This assignment of error has merit.

DEDUCTION OF ATTORNEY'S FEES AND EXPENSES FROM LOST COMMUNITY WAGES

(Assignment of Error No. 4)
Mr. Fountain complains that the trial court erred in failing to reduce Mrs. Fountain's award of lost community wages by 36% representing the percentage of attorney's fees and expenses taken out of Mr. Fountain's settlement proceeds. Pursuant to LSA-C.C. art. 2344, the portion of damages *743 received by an injured spouse attributable to expenses incurred by the community as a result of the injury or in compensation for loss of community earnings are community property. This article does not entitle the non-injured spouse to recover one-half of all expenses and lost community earnings. Rather, it entitles the non-injured spouse to recover one-half of "the portion of the damages" attributable to these losses suffered by the community. Thus, to the extent that attorney's fees and litigation expenses reduced the total amount of Mr. Fountain's settlement, Mrs. Fountain's award of one-half of the amount recovered for lost community wages should likewise be reduced. See Ellithorp, 509 So.2d at 180-181, 182.
Mr. Fountain contends that the attorney's fees and litigation expenses taken out of his settlement constituted 36% of the entire settlement amount. He uses the following figures to support this calculation:

Total settlement $2,450,000.00
Attorney's fees (30%) 727,500.00
Expenses of law firm of Davis &
Emil 61,904.75
Expenses of law firm of Lamothe,
Hamilton & Odom 61,185.17
Outstanding medicals and loans 29,429.78
 ____________
Total fees and expenses $880,019.70
$880,019.70/$2,450,000.00 = .3591917 (approximately
36%)

Thus, Mr. Fountain contends that Mrs. Fountain's claim for her half of lost community wages should be reduced by 36%. While we agree in principle with Mr. Fountain that attorney's fees and litigation expenses should have been deducted to determine Mrs. Fountain's share, we do not agree with his calculations.
A review of the itemized expenses listed by the law firm of Davis & Emil reveals that many of these expenses are not litigation expenses. Many of the expenses listed in the $61,904.75 total appear to include payment of medical and related expenses incurred by the community as a result of his injury, which are discussed below as part of his reimbursement claim against Mrs. Fountain. Also, the total of expenses listed includes advances and loans made to Mr. Fountain against his future settlement proceeds. These expenses likewise are not true expenses of litigation.
With regard to the $61,185.17 in expenses reimbursed from the settlement proceeds to the law firm of Lamothe, Hamilton & Odom, there is no itemization of expenses in the record. Thus, we are unable to ascertain which of these expenses are actually litigation-related expenses, as opposed to items such as payment of medical and related expenses or advances received by Mr. Fountain. In view of the inadequacies of the record on this issue, and in the interest of justice, we must remand this matter to the trial court for a determination of the actual amount of expenses reimbursed to the firms of Davis & Emil and Lamothe, Hamilton & Odom which are attributable to litigation. LSA-C.C.P. art. 2164; St. Pierre v. Hirschfeld, 569 So.2d 222, 226 (La.App. 1st Cir.1990).
After determining the amount paid to Davis & Emil and Lamothe, Hamilton & Odom as litigation expenses, the trial court should determine the proportionate sum of attorney's fees and expenses by which the amount of lost community wages should be reduced. See Ellithorp, 509 So.2d at 180-181. Mrs. Fountain's claim for one-half of lost community wages should be reduced accordingly.
This assignment of error has merit.

REIMBURSEMENT

(Assignment of Error No. 5)
In this assignment of error, Mr. Fountain contends that the trial court erred in failing to reimburse him for half of his separate funds which were expended to extinguish community debts incurred before the parties physically separated. The judgment and reasons for judgment are silent on the issue of Mr. Fountain's reimbursement claim. Silence in a judgment as to any part of the demand or any issue litigated is construed as a rejection of that claim or issue by the trial court. Erich Sternberg Realty Company, Inc. v. Louisiana Tax Commission, 560 So.2d 868, 876 n. 7 (La.App. 1st Cir.), writ denied, 567 So.2d 107 (La.1990).
*744 If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value of the property at the time it was used. LSA-C.C. art. 2365. The burden of proof is on the party claiming reimbursement to show that separate funds existed and that those funds were used for the benefit of the community. Patterson v. Patterson, 417 So.2d 419, 421 (La.App. 1st Cir.), writ denied, 420 So.2d 983 (La.1982).
Mr. Fountain first contends that he is entitled to reimbursement of half of $11,100.28, which represents the sum he expended after the parties physically separated which he claims was used to extinguish community debts. The only proof of these debts was a handwritten list prepared by one of Mr. Fountain's nurses. The handwritten list is extremely difficult to read, with notes and explanations inserted across the page. Mr. Fountain offered no invoices, canceled checks or receipts to substantiate his claim that he paid these amounts, that these amounts represent community debts or that these amounts were paid with his separate funds. Therefore, we find no error in the trial court's failure to reimburse these sums, inasmuch as Mr. Fountain has failed to prove his entitlement to reimbursement.
Mr. Fountain further contends that he is entitled to reimbursement for one-half of certain expenses, totalling $73,496.17, which were deducted from his settlement proceeds and allegedly used to pay community obligations.
Included in this amount is $30,691.03, which represents payments made by Davis & Emil for a van purchased by Mr. Fountain. The purchase of this van is discussed in the affidavit of Mark Davis, partner with the law firm of Davis & Emil, which was introduced by Mr. Fountain. In his affidavit, Mr. Davis stated that the purchase of the van from Chrysler Motor Company was a medical expense in that the van had been prescribed by Mr. Fountain's treating physician. Louisiana Civil Code article 2344 provides that the portion of an award attributable to expenses incurred by the community as a result of the injuries suffered is community property. Thus, we agree with Mrs. Fountain that the portion of the settlement proceeds used to pay the expense of this van were community funds accounted for in the settlement as damages recovered for expenses incurred by the community, not Mr. Fountain's separate funds. Mr. Fountain is not entitled to reimbursement for any part of these payments.
Under the same rationale, Mr. Fountain is not entitled to reimbursement for any portion of payments made out of the settlement proceeds for medical expenses incurred by the community as a result of Mr. Fountain's accident. Pursuant to LSA-C.C. art. 2344, the portion of settlement proceeds attributable to payment of these medical expenses would likewise be classified as community funds. Thus, the result is that these community obligations were paid with community funds, and no claim for reimbursement exists.
The majority of the remaining expenses represent cash advances made against Mr. Fountain's settlement proceeds, which he claims were his separate property, and payments on loans taken out by Mr. Fountain. However, Mr. Fountain has offered no proof to substantiate his allegations that these sums were used by the community. The record is devoid of any evidence to establish where these funds were deposited or how they were disbursed.
Considering the record in its entirety, we cannot conclude that the trial court erred in failing to award Mr. Fountain reimbursement, inasmuch as he has failed to prove use by the community of funds clearly identifiable as his separate funds.
This assignment of error lacks merit.

COURT COSTS

(Assignment of Error No. 6)
In his final assignment of error, Mr. Fountain contends that the trial court erred in casting him with all trial court costs. Louisiana Code of Civil Procedure article 1920 addresses the taxing of court costs as follows:

*745 Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
The trial court has broad discretion in assessing court costs and may render judgment for costs against any party as it may consider equitable. Earles v. Ahlstedt, 591 So.2d 741, 747 (La.App. 1st Cir.1991). Considering the record in its entirety, we find no abuse of discretion by the trial court in requiring Mr. Fountain to pay all trial costs.
This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the portion of the trial court judgment awarding Mrs. Fountain the sum of $84,261.00, for loss of community wages is reversed. The case is remanded to the trial court for a determination of the amount to which Mrs. Fountain is entitled from the settlement proceeds, after appropriate deduction of reduced salary payments received by the community and the appropriate percentage of attorney's fees and litigation expenses related to recovery of lost community earnings, consistent with the views expressed herein. In all other respects, the judgment of the trial court is affirmed.
Costs of this appeal are assessed equally between the parties.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] We recognize that a custodial parent does not have "visitation." However, because of the limited nature of Mr. Fountain's "custody," we shall refer to his time with Angela as visitation, as was done by the trial court. See Earles v. Ahlstedt, 591 So.2d 741, 743 n. 2 (La.App. 1st Cir.1991).
[2] To the extent that the views expressed herein conflict with those expressed by the Fourth Circuit in Thomas v. Thomas, 539 So.2d 1242, 1245 (La.App. 4th Cir. 1989), we decline to follow the rationale of our colleagues on the Fourth Circuit.