712 So.2d 1024 (1998)
Joseph H. THIBODEAUX, Jr.
v.
Susan Soudelier THIBODEAUX.
No. 97 CA 1297.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
David W. Arceneaux, Houma, for plaintiff/appellee Joseph H. Thibodeaux, Jr.
C. Bradley Cinnater, Houma, for defendant/appellant Susan Soudelier Thibodeaux
Before FOIL, WHIPPLE and KUHN, JJ.
*1025 WHIPPLE, Judge.
This is an appeal by Susan Thibodeaux from a judgment of the trial court holding, in part, that social security disability benefits received by her former husband, Joseph Thibodeaux, Jr., both prior to and subsequent to dissolution of the community property regime, but covering a period of disability which occurred during the existence of the community property regime, were his separate property. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Joseph Thibodeaux, Jr. and Susan Soudelier Thibodeaux were married on January 6, 1968. In October of 1986, during the existence of the marriage, Mr. Thibodeaux was injured in a work accident. As a result of the accident, Mr. Thibodeaux underwent surgery and was disabled from work for a period of time. He eventually returned to work some time in 1990. In addition to filing a lawsuit against various defendants in which he obtained a settlement, Mr. Thibodeaux also applied for social security disability benefits for this period of disability.
On January 23, 1992, Mr. Thibodeaux filed a petition for divorce, and a judgment of divorce was rendered on September 25, 1992, terminating the community property regime retroactively to the date of filing of the petition.
Mr. Thibodeaux was ultimately awarded social security disability benefits for a thirty-two month period of disability during the years of 1988, 1989 and 1990. However, these benefits, totaling $29,267.00, were actually received by Mr. Thibodeaux in two payments, the first on January 4, 1992, and the second on March 16, 1992.
On October 26, 1992, Mr. Thibodeaux filed a petition, seeking partition of the community property. Trial on the petition for partition was held on May 8, 1996. In calculating the accounting owed between the parties, the trial court concluded, in written reasons for judgment, that the social security disability benefits received by Mr. Thibodeaux were his separate property. The court further found that Mr. Thibodeaux had paid community debts totaling $23,212.89 with a portion of these separate funds, thereby entitling him to reimbursement from Mrs. Thibodeaux in the amount of $11,606.45.
After calculating all remaining claims for reimbursement between the parties, the trial court determined that Mrs. Thibodeaux owed a total reimbursement to Mr. Thibodeaux in the amount of $6,149.47. By judgment signed November 19, 1996, the trial court partitioned the community property and ordered Mrs. Thibodeaux to reimburse Mr. Thibodeaux the amount of $6,149.47.
From this judgment, Mrs. Thibodeaux appeals, averring that the trial court erred in determining that the social security disability benefits received by Mr. Thibodeaux were his separate property and that Mrs. Thibodeaux, consequently, owed a reimbursement to Mr. Thibodeaux for the community debts paid with the disability benefits.

DISCUSSION
The issue to be decided in this appeal is whether the social security disability benefits received by Mr. Thibodeaux both prior to and after dissolution of the community property regime, but covering a period of disability which occurred during the existence of the community property regime, are his separate property. Although not specifically addressed by the trial court or Mrs. Thibodeaux in her appellate brief, we believe that this issue centers around the question of whether the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, clause 2, preempts classification of social security disability benefits in accordance with Louisiana's community property laws.[1]
*1026 Under Louisiana's community property law, classification of disability benefits requires a determination of whether the disability payments represent deferred compensation in the nature of retirement or pension income. Brant v. Brant, 26,508, p. 2 (La. App. 2nd Cir. 1/25/95); 649 So.2d 111, 113. If the disability payments are in the nature of retirement or pension income, the benefits are classified as community to the extent attributable to years of service performed during the existence of the community. Brant, 26,508 at p. 2; 649 So.2d at 113. On the other hand, disability payments that do not qualify as deferred income should be classified in accordance with the approach utilized for tort damages and workers' compensation benefits. Chance v. Chance, 29, 591, p. 7 (La.App. 2nd Cir. 5/7/97); 694 So.2d 613, 619. Regarding tort damages and workers' compensation benefits for injuries sustained by a spouse during the existence of the community, that portion of any award designed to compensate for loss of earnings would be community property during the existence of the marital regime, but separate property following termination. LSA-C.C. art. 2344; Chance, 29,591 at p. 7; 694 So.2d at 619.
Thus, in the absence of federal preemption, Louisiana law would dictate that at least a portion of the disability payments received by Mr. Thibodeaux, if in the nature of retirement or pension income, or all of the payments received by Mr. Thibodeaux, if not qualified as deferred income, would be classified as community property. However, because we conclude that the provisions of the Old Age Survivors and Disability Insurance Family Benefit Plan (OASDI) of the Social Security Act, 42 U.S.C. § 402 et seq., preempt the application of Louisiana community property law to Mr. Thibodeaux's social security disability benefits, we find no error in the trial court's conclusion that these benefits were his separate property.
Because domestic relations are preeminently matters of state law, the United States Supreme Court has consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area. Mansell v. Mansell, 490 U.S. 581, 587, 109 S.Ct. 2023, 2028, 104 L.Ed.2d 675 (1989). Thus, before a state law governing domestic relations will be overridden, it must do "major damage" to "clear and substantial" federal interests. Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033-2034, 95 L.Ed.2d 599 (1987), quoting United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966).
While our research has not revealed any cases by the United States Supreme Court specifically addressing the issue of whether social security disability benefits may or may not be classified as community pursuant to state community property laws, several state courts have addressed this issue. Courts in the community property states of California, Texas and Arizona have all concluded that federal law preempts the application of state community property laws in classifying social security benefits. In so holding, these courts relied upon either the anti-attachment clause of the Social Security Act or the total family benefit scheme of OASDI, or both. Richard v. Richard, 659 S.W.2d 746 (Tex.App.1983); In re Marriage of Hillerman, 109 Cal. App.3d 334, 167 Cal.Rptr. 240 (1980); Luna v. Luna, 125 Ariz. 120, 608 P.2d 57 (Ariz.Ct. App.1979).[2]
*1027 In Hisquierdo v. Hisquierdo, 439 U.S. 572, 590, 99 S.Ct. 802, 813, 59 L.Ed.2d 1 (1979), the United States Supreme Court held that California community property law was preempted with regard to classification of benefits received under the Railroad Retirement Act. The court noted that the anti-attachment clause of this Act, 45 U.S.C. § 231m, demonstrated the Congressional intent to preclude claims based on marital and family obligations as well as those of ordinary creditors. The anti-attachment provision "ensures that the benefits actually reach the beneficiary."[3]Hisquierdo, 439 U.S. at 583-584, 99 S.Ct. at 809.
The Social Security Act contains a similar anti-attachment provision in 42 U.S.C. § 407, which provides as follows:
The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the monies paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
Effective January 1, 1975, the Social Security Act was amended by adding a new provision, 42 U.S.C. § 659(a), which provided that, notwithstanding any contrary law, federal benefits may be used to satisfy a legal obligation of child support or alimony. In 1977, Congress added to the Social Security Act a definitional statute, 42 U.S.C. § 662(c), which relates to § 659(a) and defines the term "alimony." Although § 662 was repealed effective February 22, 1996, § 659 was amended at the same time to include a definition of "alimony." Section 659(i) specifically states that "alimony" does not include "any payment or transfer of property or its value by an individual to a spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." (Emphasis added).
In Hisquierdo, the Supreme Court noted that these amendments had expressly overridden the anti-attachment provision of the Social Security Act with regard to garnishment for claims based on spousal support. However, the amendments declined to do so for community property claims. Thus, the court stated that it was logical to conclude that Congress thought that a family's need for support could justify garnishment, even though it deflected other federal benefit programs from their intended goals, but that community property claims, which are not based on need, could not do so. Hisquierdo, 439 U.S. at 587, 99 S.Ct. at 811.
Additionally, we note that the United States Supreme Court interpreted § 407 of the Social Security Act in Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973). In Philpott, the Court addressed the issue of whether social security disability benefits which were paid retroactively to a beneficiary were subject to attachment by the State of New Jersey. The Court held that § 407, the anti-attachment provision of the Social Security Act, barred the State of New Jersey from reaching these federal disability payments, stating that § 407 "imposes a broad bar against the use of any legal process to reach all social security benefits." Philpott, 409 U.S. at 417, 93 S.Ct. at 592. (emphasis added).[4]
*1028 In addition to the broad bar of the anti-attachment provision of the Social Security Act, the enactment of a total OASDI family benefit scheme, 42 U.S.C. § 402, also suggests a Congressional intent to replace state family law as it applies to social security. Pursuant to § 402 of the Act, the spouse, dependent children, and even a divorced spouse of the retired or disabled employee may receive OASDI benefits, in addition to the primary benefits paid to the employee. See Richard v. Richard, 659 S.W.2d 746, 749 (Tx.Ct.App.1983); In re Marriage of Hillerman, 109 Cal.App.3d at 343-344, 167 Cal. Rptr. at 245. Payment of the derivative benefits to a divorced spouse of a covered employee does not reduce the benefit payable to the employee. 42 U.S.C. § 403(a)(3)(C). Thus, it appears that the Social Security Act has been structured so as to replace the diverse state law with a uniform federal system of distribution. See Richard, 659 S.W.2d at 749; In re Marriage of Hillerman, 109 Cal.App.3d at 345, 167 Cal.Rptr. at 246.
Therefore, we conclude that there is a conflict between the terms of the relevant statutes of the Social Security Act and the community property right asserted by Mrs. Thibodeaux herein. We further conclude that the treatment of social security disability benefits paid during the marriage as community property would do "major damage" to "clear and substantial" federal interests. Application of Louisiana's community property laws would interfere with the uniform federal system of distribution which Congress has established through the OASDI benefits scheme of the Social Security Act.[5] Accordingly, we conclude that the Supremacy Clause of the United State Constitution preempts classification by this court of Mr. Thibodeaux's social security disability benefits as community property. Thus, we find no error in the trial court's determination that these benefits were the separate property of Mr. Thibodeaux.

CONCLUSION
For the above and foregoing reasons, the November 19, 1996 judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant, Susan Soudelier Thibodeaux.
AFFIRMED.
NOTES
[1] In concluding that Mr. Thibodeaux's social security disability payments were his separate property, the trial court relied on this court's decision in Fountain v. Fountain, 93-2176 (La. App. 1st Cir. 10/7/94); 644 So.2d 733. However, this court's decision in Fountain did not directly address classification of social security disability benefits as separate or community. Rather, the former husband had received a large personal injury settlement for an injury sustained during the existence of the community property regime, and social security disability benefits were also being paid. Thus, the issue before the court was whether the social security disability payments should have been applied as an offset to the community's loss of wages claims, a collateral source issue. Fountain, 93-2176 at pp. 10-14; 644 So.2d at 740-742. Thus, this court's conclusion that the social security disability payments were not to be used as an offset to the community's loss of wages is not dispositive of the issue squarely presented herein.
[2] Regarding Louisiana jurisprudence on the classification of social security benefits, in Lambert v. Lambert, 480 So.2d 784, 788 (La.App. 3rd Cir. 1985), the Third Circuit Court of Appeal found no error in the trial court's classification of social security benefits received by the husband as the husband's separate property. However, the opinion does not set forth the basis of the court's conclusion on this issue.

Some state courts in states with "equitable distribution" laws, as opposed to community property laws, have held that while federal law precludes the state court from dividing social security benefits in a property division or considering such benefits as an asset of the marital estate, the court may consider the value of the benefits as a factor in making an equitable distribution of marital assets. See Mahoney v. Mahoney, 425 Mass. 441, 681 N.E.2d 852 (1997); Marriage of Brane, 21 Kan.App.2d 778, 908 P.2d 625 (1995).
[3] At the time, 45 U.S.C. § 231m provided, in part, as follows:

[N]otwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated.
"In response to Hisquierdo, Congress amended 45 U.S.C. § 231m in 1983 to allow courts to anticipate supplemental railroad retirement benefits in order to distribute property in accordance with court-ordered property settlements pursuant to divorce." Pub.L. 98-76, Title IV, § 419(a)(3); Mahoney, 425 Mass. at 445 n. 7, 681 N.E.2d at 855 n. 7.
[4] We note that in 1974, Congress enacted 42 U.S.C. § 1383(g) to provide a limited exception to the broad effect of the anti-attachment provision to allow state agencies to recover interim public assistance provided by them to SSI applicants out of retroactive benefits when awarded. Rodriguez v. Perales, 86 N.Y.2d 361, 365, 657 N.E.2d 247, 249, 633 N.Y.S.2d 252, 254 (N.Y. 1995).
[5] We note that In re Marriage of Hillerman and Richard both dealt with classification of future payments made pursuant to OASDI. In re Marriage of Hillerman, 109 Cal.App.3d at 337, 167 Cal.Rptr. at 241; Richard 659 S.W.2d at 747. However, we believe that, given the broad bar of the anti-attachment provision found in § 407 as interpreted by the Supreme Court in Philpott, the same rationale should apply to social security disability benefits paid during the marriage.

In Bowlden v. Bowlden, 118 Idaho 89, 794 P.2d 1145 (Idaho Ct.App.1989), the Idaho Court of Appeals specifically addressed the issue of whether social security payments received during the marriage were community property. The court concluded that federal law preempted application of its state's community property laws with regard to OASDI benefits. Thus, the court held that a spouse's social security benefits paid during the marriage were that spouse's separate property. Bowlden, 794 P.2d at 1147. However, the Idaho Supreme Court vacated the Court of Appeals' opinion, on the basis that the case lacked an actual or justiciable controversy. Bowlden v. Bowlden, 118 Idaho 84, 86, 794 P.2d 1140, 1142 (Idaho 1990). The court noted that while the parties disputed the classification of social security benefits received during the marriage, there was no showing in the record as to the continued existence of the actual social security benefits received. Thus, the Supreme Court remanded the case to the magistrate court for a determination of whether any of the social security benefits continued to exist. Bowlden, 118 Idaho at 86, 794 P.2d at 1142.