| ARMSTRONG, C.J.,
dissents.
I respectfully dissent. I would affirm the judgment of the trial court.
There is no question that this is a fact intensive/manifest error case turning largely on the trial court’s weighing of conflicting expert testimony.
The reasoning of the Medical Review Panel begins with the premise that the baby was right occiput anterior (ROA) in his presentation. This is supported by the medical records. The findings of the Panel next note that the baby suffers from Erb’s Palsy on the right, but that in an ROA presentation the baby’s left shoulder would be impacted and the injury would be to the left arm. From this the panel drew the reasonable conclusion that the baby’s injury occurred prior to birth “and the delivery team most likely had nothing to do with it.” The Panel’s findings concluded with the statement that:
Erb’s Palsy can occur in infants delivered by caesarian section and is a result of a yet unknown intrauterine mechanism.
' The significance of this final finding is that it means that the condition which afflicts Shawn Lewis, Jr. is known to occur in the absence of the trauma of natural [^delivery, i.e., it is reasonable to conclude, as did the Medical Review Panel and as the trial court implicitly did, that there is no basis for finding, more likely than not, that the defendants caused the baby’s injuries or that they violated any standard of care. Additionally, the reasons of the Panel were elaborated upon in the testimony at trial by the' members of that Panel. The burden is on the plaintiffs to prove their ease by a preponderance of the evidence.
The weight to be given to the findings of the Medical Review Panel is subject to credibility decisions which are to be made by the fact finder. Williams v. Robinson, 98-3016, p. 7 (La.App. 4 Cir. 5/31/00), 765 So.2d 400, 404.
The plaintiffs’ expert, Dr. O’Leary, contends that the baby’s presentation was not ROA, contrary to what is shown in the medical records. However, the findings of the Medical Review Panel and the medical records were submitted as a joint exhibit by all parties. It was not manifest error for the trial judge to accept the fact that the presentation was ROA based on a review of those records in preference to the opinion expressed by the plaintiffs’ expert, especially when other experts refuted the testimony of the plaintiffs’ expert.
■ Dr. Stephens refuted Dr. O’Leary’s theory that the baby’s shoulder could have been stuck on the sacral promontory (tail bone), by explaining that if that had been the case the baby almost certainly would have been delivered by Caesarian section because in such instances “the head is not going to come out.” This was confirmed by Dr. Felton Winfield, another member of *965 the Medical Review Panel who testified on behalf of the defendants. As it is undisputed that the baby’s head had, in fact, emerged without any special intervention, a reasonable fact finder could choose to believe the defendants’ experts on this issue instead of Dr. O’Leary, and that is what the trial judge implicitly did.
The plaintiffs medical expert, Dr. O’Leary, testified that the baby’s head was subjected to 100 pounds of force from the delivering personnel. Dr. Kevin 13Stephens, a medical expert and member of the Medical Review Panel, contradicted Dr. Leary on this and other points:
First, as I mentioned earlier, if you do upward traction, that makes no obstetrical sense at all, because you even just impact further that shoulder that you are trying to get dislodged. That would be analogous to having the mother push the baby back up. You don’t get the baby out that way. Number two, 100 pounds of force is an awful lot of force, if you put 100 pounds of force on the baby’s head you can almost decapitate the baby if you put that much pressure on it, so I disagree with that.
Dr. Vincent Culotta’s testimony was submitted for perpetuation because he was unavailable in Nicaragua performing missionary work at the time of trial. He was a member of the Medical Review Panel and testified as an expert OB/GYN on behalf of the defendants. When asked about Dr. Leary’s opinion that 100 pounds of force had been applied to the baby’s head he responded:
If you had an impacted shoulder and you pulled with a force of a hundred pounds without dislodging the shoulder, the most likely event would be that you would fracture the clavicle, you would compress and fracture the scapula and this whole body would be pulled down, or you would pull the head off the infant. A hundred pounds of force is an extraordinary amount of force. I just — I can’t begin to tell you how much force that is. I don’t think that most people could deliver that amount of force, quite frankly. A hundred pounds of force is a tremendous amount of force.
There can be no manifest error in the implicit decision of the fact finder to credit the testimony of the defendants’ experts over that of Dr. O’Leary. The trial judge acted well within the parameters established by this Court in resolving such conflicts:
It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Fountain v. Fountain, 93-2176, p. 5 (La.App. 1 Cir. 10/7/94), 644 So.2d 733, 738. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Id. The effect and weight to be given to expert testimony is within the broad discretion of the trial judge. |4 Williams v. Rubicon, 2001-0074 (La.App. 1 Cir. 2/15/02), 808 So.2d 852.
Lanasa v. Harrison, 02-0026, p. 3 (La.App. 4 Cir. 8/7/02), 828 So.2d 602, 605.