ARMSTRONG, Judge.
Following the dissolution of her marriage to plaintiff, Charles Thomas, defendant, Gail Harkins Thomas, petitioned the court for a judicial partition of their community properly. Defendant now appeals the judgment of the trial court partitioning that community property.
Plaintiff and defendant were married on February 21,1981. The community regime was terminated as of July 31, 1986. Prior to the termination, on November 12, 1984, plaintiff was injured in a work-related accident. He was employed by Gulf Engineering Co. (Gulf) as a boilermaker and was apparently injured while performing Gulf contract work for Shell Oil Co. (Shell). •Plaintiff subsequently filed a personal injury suit in federal court against Shell for damages sustained as a result of the accident. It is defendant’s entitlement to a portion of these damages which is the subject of this appeal.
At trial it was stipulated that from the day of his accident, November 12, 1984, to July 28, 1986, several days before the termination of the community, plaintiff was paid $21,824.00 in worker’s compensation benefits. It was further stipulated that plaintiff’s earnings during that period would have been $40,639.83; that he settled his personal injury suit against Shell for $185,000.00; and that after attorney’s fees and expenses totalling $79,516.09 were deducted, plaintiff had a net recovery of $105,483.91.
The trial court calculated that the attorney’s fees and expenses of $79,516.09 represented 43% of plaintiff’s total recovery of $185,000.00. The court concluded that the amount of plaintiff’s total recovery which was in compensation of the loss of community earnings should be 43% of $40,639.83, the amount he would have earned. 43% of $40,639.83 was determined to be $23,-164.23. The trial court found that all of the $21,824 in worker’s compensation benefits received by plaintiff benefited the community. The court subtracted the $21,-824.00 from the $23,164.23, leaving a balance of $1,340.23 as the amount of plaintiff’s settlement which was in compensation of the loss of community earnings, and therefore community property. Defendant’s one-half community interest was $670.00. This amount was awarded to defendant.
On appeal defendant claims that the trial court erred (1) in finding that the entire amount of worker’s compensation benefits received by plaintiff benefited the community or defendant, and (2) in subtracting the $21,824.00 in workers compensation benefits from that portion of plaintiff’s settle *1244 ment which was determined to be in compensation of lost community earnings.
La.C.C. art. 2344 states:
Damages due to personal injuries sustained during the existence of the community by a spouse are separate property-
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse. Acts 1979, No. 709, § 1. (emphasis ours)
Revision Comments — 1979
(a) The notion of personal injury includes injuries to the personality of a spouse and workman’s compensation benefits.[1]
Thus, we begin with the basic premise that the damages received by the plaintiff for his personal injuries sustained during the existence of the community were his separate property. A reading of Revision Comment (a) makes it clear, we feel, that worker’s compensation benefits are “damages due to personal injuries” as contemplated by the statute. The $21,824.00 received by plaintiff over eighty-eight weeks ($248.00 per week) was “in compensation of the loss of community earnings” and was community property.
We find no error with the trial court’s finding that the entire amount of worker’s compensation benefits benefited the community. Plaintiff admitted that he deposited all of these compensation checks into his separate bank account. This account had been opened by him in 1983, at a time when he and his wife were physically separated. They subsequently resumed living together as man and wife but he maintained this separate account. He and his wife also had a joint account into which he apparently did not deposit any monies, at least from the date of his injury to the date the community was terminated. During this period the defendant deposited all of her paychecks into the joint account and the plaintiff never withdrew any of this money for himself or wrote checks on the account.
The evidence showed that from the date of his accident until July 8, 1986, the plaintiff wrote checks payable to the defendant totalling $3,090.00. But she also wrote numerous checks on the account. She wrote checks on plaintiff’s account to pay utility bills and to pay for clothing. She also wrote checks payable to herself. Out of the account plaintiff paid bills for the automobile insurance for the family vehicles, for cable television service, and for pest control services.
Plaintiff and defendant physically separated in February, 1986. Plaintiff’s petition for separation from bed and board alleged that defendant forced him to leave the matrimonial domicile. However, the judgment of separation cites mutual fault as the cause. Plaintiff apparently moved into his mother’s home after leaving the matrimonial domicile. The plaintiff was receiving approximately $1,000.00 per month in compensation benefits while defendant was earning approximately the same amount. There were no children bom of the marriage. Each party obviously had their own expenses during this period of separation. Defendant implies that, except for the $3,090.00 paid directly to her, plaintiff spent all of the $21,824.00 on himself, to go on fishing trips. She testified that the plaintiff went fishing three times a week. He also went shrimping sometimes. The record does not support defendant’s *1245 position that the worker’s compensation benefits only benefited the plaintiff.
The record evidence as a whole furnishes a reasonable factual basis for the trial court’s finding that the worker’s compensation benefits — which were community property — did benefit the community. We are unable to say that such a finding is clearly wrong. Canter v. Koekring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
As previously mentioned, we feel that both worker’s compensation benefits and proceeds from personal injury actions are “damages due to personal injuries” as contemplated by the legislature and evidenced by Revision Comment (a) to La.C.C. art. 2344. Ordinarily, if an injured and disabled person is paid worker’s compensation benefits the employer or worker’s compensation insurance carrier will intervene in the person’s personal injury action to recover amounts it has paid in compensation benefits. In such a case those recovered funds should be deducted from that portion of the injured spouse’s recovery which is considered in compensation of the loss of community earnings. In the case at bar, however, plaintiff’s employer, Gulf, apparently decided not to seek reimbursement of the $21,824.00 it had paid plaintiff in compensation benefits. It appears that plaintiff’s settlement of his lawsuit was conditioned on this gesture by Gulf. Under these circumstances the amount of the worker’s compensation benefits should not have been deducted from the portion of plaintiff’s settlement which was “in compensation of the loss of community earnings.”
Plaintiff cites Ellithorp v. Ellithorp, 509 So.2d 178 (La.App. 1st Cir.1987), as authority for his assertion that the worker’s compensation benefits should be deducted from any portion of the damages in compensation for lost community earnings. In Elli-thorp the trial court deducted “salary continuation” payments received by the injured husband from the amount determined to have been lost community earnings. The court then used the remainder as the amount of the husband’s personal injury settlement which was in compensation of the loss of community earnings. The appellate court affirmed the judgment of the trial court.
We disagree with Ellithorp insofar as it can be interpreted to allow worker’s com•pensation benefits received as damages in compensation of the loss of community earnings to either (1) be deducted from the total of lost community earnings to reduce that loss, as the Ellithorp court did with the salary continuation payments, or (2) be deducted from the portion of damages received from a personal injury suit in compensation of the loss of community earnings, as the plaintiff urges.
At trial plaintiff’s counsel questioned plaintiff’s personal injury attorney, Peter Abadie, regarding the negotiation proceedings to settle his lawsuit. Counsel attempted to estimate what proportion, if any, of plaintiff’s final settlement of $185,000.00 was in compensation of the loss of community earnings. Plaintiff attempts to compare the settlement figure to a figure he originally offered to settle for, together with the figure stipulated as lost community earnings, and calculate a percentage of the actual settlement which represented the loss of community earnings. We decline to employ this procedure, finding it too speculative.
We know that: (1) plaintiff’s past lost income from the time of his injury to the date the community was terminated was $40,639.83, (2) he received worker’s compensation benefits during the existence of the community regime in the amount of $21,824.00 which were in compensation of the loss of community earnings, (3) the settlement was apparently conditioned on the worker’s compensation insurer waiving its right to recover the $21,824.00, and (4) 43% of plaintiff’s $185,000.00 settlement was deducted for attorney’s fees and expenses.
Since the settlement was not broken down into categories of past lost income, future lost income, or general damages, we must make some assumptions to equitably resolve this case. We will assume that the settlement did not include recompense for *1246 the full $40,639.83 for past lost income/lost community earnings. Otherwise the worker’s compensation carrier would, we assume, have asserted its right to the $21,-824.00 it paid out in worker’s compensation benefits. We also assume that the defendants, knowing that plaintiff had received the worker’s compensation benefits already and that the worker’s compensation carrier was waiving its right to reimbursement, would not have given him any more for past lost income than was necessary to recompense him for the full $40,639.83.
Therefore, we find that, based upon the record evidence, more probably than not the settlement included only $18,815.83 in damages in compensation for past lost income/lost community earnings. From this figure we must subtract 43%, representing the portion attributable to attorney’s fees and expenses. 43% of $18,815.83 is $8,090.80. $18,815.83 less $8,090.80 equals $10,725.03. $10,725.03 represents the share of plaintiff’s settlement which is in compensation of the loss of community and therefore community property. Defendant Gail Harkins Thomas is entitled to one-half of the $10,725.03 as her share. One-half of $10,725.03 equals $5,362.51.
For the foregoing reasons we amend the judgment of the trial court to award defendant, Gail Harkins Thomas, $5,362.51.
AMENDED, AND AS AMENDED, AFFIRMED.
CIACCIO, J., concurs in the result.
BARRY, J., concurs for the reasons assigned by CIACCIO, J.

. All of plaintiffs medical expenses, except for $3.00 paid for each of an unknown number of prescriptions, were paid by Gulf and/or health insurance. There was no evidence presented at trial as to any other expenses incurred by the community as the result of plaintiffs injury. None of the proceeds of plaintiffs settlement can be considered attributable to medical or other expenses incurred by the community as a result of the injury.