682 So.2d 797 (1996)
James Michael RAMSEY, Plaintiff-Appellee,
v.
Penny Swims RAMSEY, Defendant-Appellant.
No. 96-481.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Rehearing Denied November 22, 1996.
*798 Jimmy Roy Faircloth, Jr., Alexandria, for Plaintiff-Appellee.
Christopher Alan Edwards, Lafayette, for Defendant-Appellant.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
Defendant, Penny S. Ramsey, appeals the judgment of the trial court finding that the funds held in an investment account were the separate property of James M. Ramsey. For the following reasons, we affirm.

FACTS
James and Penny were married on April 7, 1979, in Alexandria, Louisiana, and maintained a regime of community of acquets and gains until the date of their divorce, October 21, 1994. All issues concerning the community property were resolved by the parties with the exception of the status of a Marquis Investment Account and a check of August 30, 1994, in the amount of $28,309.58, from the sale of stock.
The money in the Marquis Investment Account was from the settlement of a lawsuit involving James. He was injured in an offshore accident which resulted in the amputation of a portion of his left foot. At the time of the accident, he was earning $29,500.00 per year. James filed suit, in his name only, for the damages he sustained in this accident on March 28, 1995. On August 31, 1987, some three years after the accident, Penny filed an intervention seeking the loss of consortium prompting the defendant in the original suit to file an exception of prescription to the intervention. Without resolving the prescription question, the case was settled in 1988 for the lump sum of $750,000.00. From this settlement, $250,000.00 was retained by James' attorney as fees, costs, and other expenses with the remainder paid to both James and Penny in a single check.
The $500,000 was deposited into a new investment account. The settlement funds were thereafter maintained separately from James' and Penny's other assets even though the funds were deposited and redeposited into different certificate of deposits, commercial investment accounts, and other investment vehicles. The funds were always maintained in both James' and Penny's names. Over the course of time, certain funds were withdrawn for the benefit of the community estate and all interest was paid to and enjoyed by the community. No interest was reinvested in the investment account.
At the time of this trial there was approximately $243,000.00 left in the Marquis Investment Account. Penny contended that these funds were community funds because the settlement was in a lump sum thereby causing the funds to be commingled beyond the point of determination. The trial court, however, found that the funds did not become community funds due to a transfer or co-mingling; that because the loss of consortium claim had prescribed, none of the funds represented such damages; and that the funds did contain loss of earnings which are community funds from the date of the accident to the date of the termination of the community of acquets and gains. The court then determined that of the $750,000.00, $450,000.00 represented lost wages. The court subtracted a proportionate amount of attorney fees, $150,000.00, and the remainder, $300,000.00, was divided by James' expected work life at the date of the accident, 38 years. The result was a loss of earnings of $7,894.73 per year. Since 10 years elapsed from the date of the accident to the date of the divorce, the court multiplied the annual lost earnings by 10 years resulting in $78,947.30 lost earnings which accrued during the existence of the marriage. The trial court found that amount to be a community asset. The court also found that the following community property was purchased with James' separate funds from the investment account:

Home: $ 91,894.00
GMC Truck: $ 18,000.00
Ford Explorer: $ 14,313.00
Investment in Bordelon/Ramsey: $ 37,000.00
 ___________
TOTAL $161,207.00
 ___________

*799 The trial court then subtracted the loss of earnings attributed to community funds from the settlement, $78,947.30, from the amount of settlement funds attributed to separate property used for community purposes, $161,207.00, to arrive at a figure of $82,259.70 which represented the amount of separate funds used for the benefit of the community. The trial court divided this amount in half, determined that Penny was indebted to James in the amount of $41,129.85, and ordered that reimbursement be taken from Penny's portion of the community property as partitioned by the court.

SPECIFICATIONS OF ERROR
Penny alleges the trial court committed the following errors:
1. Finding that all of the funds held in Marquis Investment Account in the names of James M. Ramsey and Penny S. Ramsey were the separate property of James M. Ramsey.
2. Finding that James M. Ramsey was entitled to reimbursement from Penny S. Ramsey in the amount of $41,129.85 from her portion of the community property.
3. Refusing to follow the jurisprudence on co-mingling separate and community funds to the facts in this case in the formulation of his opinion.

STANDARD OF REVIEW
A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La. 1989); Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987). "The reviewing court must give great weight to factual conclusions of the trier of fact; where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).

LAW
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community but either spouse may prove that they are separate property. La. Civ.Code art. 2340. A party asserting the separate nature of property acquired during the marriage has the burden of overcoming the strong presumption in favor of community; to meet the burden, proof must be clear, positive, and of a legally certain nature that property was separate instead of community. Hinckley v. Hinckley, 583 So.2d 125 (La.App. 4 Cir.1991), writ denied, 590 So.2d 64. The burden of overcoming the presumption that things in possession of a spouse during the existence of a community regime are community property rests on the party who asserts that property is separate; and to meet this burden, proof must be clear, positive, and of a legally certain nature. Salley v. Salley, 94-418 (La.App. 3 Cir. 11/23/94), 647 So.2d 1164, writ granted, 95-0387 (La.4/7/95), 652 So.2d 1339, affirmed, 95-0387 (La.10/16/95), 661 So.2d 437.
La. Civ.Code art. 2344 provides that:
Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.
Finally, La.Civ.Code art. 2367 states in part:
If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the *800 amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.

DISCUSSION
Under La.Civ.Code art. 2344, a portion of the 1988 settlement was clearly community property (loss of earnings during the existence of the marriage) and a portion of the settlement was separate property (other general damages). Penny argues that the case of Cason v. Cason, 564 So.2d 808, (La. App. 3 Cir.1990) is controlling in the case at bar. We reject that argument finding that there are significant factual differences between the two cases. Primarily, in Cason, 564 So.2d at 814, this court found that "because of extensive commingling, all settlement funds which remain [at the dissolution of the marriage] must be regarded as belonging to the community." (Emphasis added). In the case at bar, it is clear that there was no commingling of the settlement funds with any other community funds. This case is more akin to the cases of West v. Ortego, 325 So.2d 242 (La.1975); Mead v. Mead, 442 So.2d 870 (La.App. 3 Cir.1983), and Placide v. Placide, 408 So.2d 330 (La.App. 3 Cir. 1981), writ denied, 412 So.2d 77 (La.1982), where it was found that settlement funds could be apportioned into both pre-dissolution (community) and post-dissolution (separate) funds. In Placide, 408 So.2d at 333, this court held:
[t]he case of West v. Ortego, supra, dictates that we resort to equity to apportion monies acquired after dissolution of the community for damages awarded in compensation for an accident which occurred before the dissolution of the community when the award covers both pre-dissolution and post-dissolution losses. We find that there is sufficient evidence before us to permit an equitable apportionment of the damages awarded to appellant.
We, therefore, hold that the fact that the funds in the instant case were not divided at the time of the settlement did not effect the mixed nature of the funds nor did it cause the funds to be commingled at that time. It is sufficient to say that the funds could have been equitably divided into loss of earnings and other general damages at the time of the settlement. These funds were placed in a new investment account and maintained separate from other community property of James and Penny. No interest was ever redeposited into that account. It would therefore follow that if the funds were divisible into separate and community property in 1988 and that no commingling occurred since that time, the funds would be divisible at the time of the dissolution of the marriage.
The trial court held that the funds were not commingled and divided them into separate and community property. We hold that the trial court was not clearly wrong in making that determination. The trial court further apportioned the funds into James' separate property and James' and Penny's community property. The courts in West, 325 So.2d 242, and Placide, 408 So.2d 330, found that such an apportionment of funds can be made by the trial court on the basis of equity. We find that the apportionment made by the trial court was equitable and, therefore, not clearly wrong.[1] Finally, the trial court simply divided the net amount of lost earnings ($300,000.00) by James' work life expectancy at the time of the accident (38 years) to determine the annual amount dedicated to lost earnings ($7,894.73). Once again, we cannot find the trial court erred in its determination of the amount attributed annually to lost earnings even though we feel there are other reasonably acceptable methods of making the same calculation.[2] Therefore, *801 we hold that the trial court was not clearly wrong or manifestly erroneous in apportioning the sum of $78,947.30 from the investment account to James' and Penny's community property and the remainder to James' separate property.
Having made that determination, the trial court then addressed the issue of the investment account funds used for the purchase of community property, finding that a total of $161,207.00 of community assets was purchased with James' separate funds. After a review of the record, we find that the trial court was correct in that determination. The trial court then subtracted $78,947.30 from $161,207.00 and halved the difference arriving at a figure of $41,129.85, which the trial court found was a debt Penny owed James' separate property. Under La.Civ.Code art. 2367, when separate property of a spouse is used to acquire community property, that spouse, upon termination of the community, is entitled to one-half of the amount or value that the property had at the time it was used.
We hold that the spouse whose separate property was used for the benefit of the community property is entitled to a reimbursement of one-half of this amount from the other spouse's share of the community property. We are guided by the Louisiana Civil Code where article 2358 mandates that reimbursement shall be made from the patrimony of the spouse who owes reimbursement. The comments to La.Civ.Code art. 2358.1 tell us that this article was enacted to make it clear that the reimbursement is to come from the patrimony of the other spouse, which is comprised of the spouses' share of the community and his separate property, and not from the total net value of the community.[3] To hold otherwise would not fully reimburse James for his separate property that was used to benefit the community ($161,207.00). Therefore, the community property, $264,409.30 ($185,462.00, the amount stipulated to by the parties, plus $78,947.30, the amount attributed to lost earnings during the existence of the marriage), is divided equally between James and Penny. Following that distribution, James would receive one-half of his separate funds used for the benefit of the community. Then, from her share of the community property, Penny shall reimburse James' separate property one-half of the funds used for the benefit of the community property ($80,603.50). Following that reimbursement, James receives the other one-half of his separate funds used for the benefit of the community property.

CONCLUSION
Clearly, a portion of the settlement was to compensate James for the loss of the majority of his left foot and for the pain and suffering he endured. Following the mandate of La.Civ.Code art. 2344, the trial court determined the amount that was attributable to community property. After reviewing the record, and especially the trial court's reasons for judgment, we cannot say that the trial court committed manifest error nor was it clearly wrong. Indeed, we find that its determination was quite equitable. We cannot agree with Penny's theory that since there was a lump sum settlement, the funds were commingled from the beginning to the point that they were incapable of being divided. If we were to follow such reasoning, this would create an inequitable situation where the non-injured ex-spouse would reap a windfall as a result of the injuries of their exspouse. For the foregoing reasons, we find that Penny's assignments of error lack merit and affirm the trial court's decision. We do, however, amend the trial court's ruling as set forth above and render accordingly. All *802 costs of these proceedings are taxed to the appellant, Penny S. Ramsey.
AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.
NOTES
[1] We find the trial court's determination was quite equitable when it apportioned the funds $450,000.00 for loss of earnings and $300,000.00 for pain and suffering. If the $450,000.00 assigned as loss of earnings could be invested at 7% interest it would yield the sum of $27,500.00 per year in interest with no reduction in the principle amount.
[2] That simple approach, however, fails to consider the time value of money, the prospect of increased wages, and the impact of inflation. The damage award might well have been based on these and other assumptions. A more complex formula for the division would probably be a more realistic measure of how much of the award was to compensate for lost earnings in the early years (when not much time for compounding the invested funds existed) and how much was to compensate for later years (when a smaller sum with compounded investment interest would have been allocated). On the other hand, such a division is based on uncertain assumptions about interest rates and inflation. Indeed, the award might have been produced by a compromise jury verdict for which no stated assumptions can be found. 16 K.S. SPAHT AND W.L. HARGRAVE, LOUISIANA CIVIL LAW TREATISE, MATRIMONIAL REGIMES, REGIMES, § 3.20 (1989).
[3] Although it is not applicable in the case sub judice, La.Civ.Code art. 2367 limits the liability of the spouse who owes reimbursement to the value of his share of the community after deduction of all community obligations.