NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-44

JOYCE ANGEL CAZELOT

VERSUS

WILFRED A. CAZELOT

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2014-883-A
HONORABLE KERRY LYNDON SPRUILL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, D. Kent Savoie, and Candyce G. Perret, Judges.

APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; JUDGMENT REVERSED IN PART, AMENDED, AND AS AMENDED, AFFIRMED IN PART, AND REMANDED FOR TRIAL ON THE MERITS.

**Norris Joseph Greenhouse**
**Attorney at Law**
**P.O. Box 444**
**Marksville, LA 71351**
**(318) 253-6394**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
     **Joyce Angel Cazelot**

**Cory O. Roy**
**Brandon J. Scott**
**Benjamin D. James**
**Renee Y. Roy**
**Roy & Scott**
**P. O. Box 544**
**Marksville, LA 71351**
**(318) 240-7800**
**COUNSEL FOR DEFENDANT-APPELLANT:**
      **Wilfred A. Cazelot**

**PERRET, Judge.**

This case arises from a petition to partition the parties' community property following a divorce judgment. The judgment appealed was rendered after a hearing was held for the limited determination of the classification and valuation of settlement funds obtained by the parties during their marriage. The trial court concluded the funds consisted of both separate and community property, had not been commingled, and divided the proceeds accordingly to compensate the parties for their personal injuries sustained in the accident. For the reasons set forth below, we convert this appeal to a supervisory writ, grant the writ, and render an opinion reversing the trial court's judgment in part, amending, and affirming it in part, as amended.

### FACTS AND PROCEDURAL BACKGROUND

Joyce Cazelot ("Ms. Cazelot") filed for divorce on August 26, 2014, and a final judgment of divorce was rendered on May 5, 2015. Wilfred Cazelot ("Mr. Cazelot") filed a petition to partition the community property and for reimbursement on January 27, 2015, which is currently still pending. On May 23, 2017, a hearing was held for the limited determination of the classification and valuation of settlement proceeds obtained by the parties during their marriage from a lawsuit wherein both parties were plaintiffs.[1]

The testimony and evidence adduced at the hearing was that on August 19, 2010, both parties were involved in a motorcycle accident in Tennessee and both sustained injuries, though Ms. Cazelot argues her injuries were far more severe. The parties filed suit in federal court in Tennessee for damages, both were named

---

[1] As noted below, we interpret this hearing to have been a bifurcation of the reimbursement portion of the partition hearing, not a trial of the traverses as erroneously stated in the judgment.

as plaintiffs, and the suit resulted in a settlement for the defendants' liability limits for a total sum of $400,000.00. The settlement documents did not allocate money to specific injuries or plaintiffs. After related fees were deducted as itemized in the settlement documents, which were admitted as joint exhibits, the net settlement totaled $206,202.13, which was deposited into the parties' joint checking account in April 2012.

At the hearing Mr. Cazelot argued, as he does on appeal, that the funds were "hopelessly comingled [sic]" after being deposited into the parties' joint account along with other sources of income and used indiscriminately by both parties for various expenses. Additionally, he argued Ms. Cazelot was not able during her hearing testimony to identify what funds, settlement funds or other, were used for various purchases following the deposit of the settlement funds into the parties' joint checking account.

The bank statements and testimony submitted at the hearing showed that typically, in one month, there would be a deposit of roughly $722.00 representing Ms. Cazelot's social security disability benefits after the motorcycle accident, and two checks, between $930.00 and $1,200.00 each, representing Mr. Cazelot's payroll earnings. The parties paid for their living expenses out of this account, having roughly $200.00 left over each month prior to the settlement. Following the settlement deposit, large expenditures were made by checks drawn on the joint account. Each check included a notation of what was purchased or paid for with the funds. Various purchases included paying off the home mortgage, which was approximately $54,000.00, the construction of a shop adjacent to the home, and the purchase of vehicles and vehicle accessories. However, as of the October 2012 bank statement, the ending balance for that period was back down to roughly

2

$200.00 after the typical deposits and withdrawals for daily living expenses. Therefore, the trial court disagreed with Mr. Cazelot that all the proceeds became community property because of extensive commingling. Instead, the trial court concluded that "a large portion of the total net proceeds is readily traceable and accounted for as set forth above." Thus, in the interest of justice and because of La.Civ.Code art. 2344, the trial court divided the settlement proceeds according to the specific injuries the Cazelots sustained in the motorcycle accident and labeled the proceeds as community or separate property.

In dividing the proceeds according to injury, the trial court accepted evidence of the parties' medical bills and records that correlated to their injuries sustained in the motorcycle accident. The trial court concluded Ms. Cazelot was entitled to a larger portion of the settlement for general damages because of her more severe and disabling injuries. The trial court then classified those sums as either separate or community property.

Specifically, the trial court determined that $42,240.00[2] of the settlement was to compensate Ms. Cazelot for her lost income during the community regime and, therefore, community property. Additionally, $1,194.00 of the settlement was Mr. Cazelot's lost income during the community property regime and, therefore, community property. The trial court further found that the parties had $2,890.98 in out-of-pocket medical expenses, which were a community obligation, and designated that amount of the settlement as community property. The trial court then partitioned these community property amounts evenly between both spouses. Next, the trial court determined that $153,877.15 of the settlement was to

---

[2] See discussion regarding correction of the trial court's loss of income calculation in the discussion of Assignment of Error Number 3.

compensate Ms. Cazelot for her general damages and her future loss of income from the settlement, and $6,000.00 of the settlement was to compensate Mr. Cazelot for his general damages. Accordingly, under La.Civ. Code art. 2344, the trial court classified both of those amounts as the separate property of Ms. Cazelot and Mr. Cazelot, respectively.

On appeal, Mr. Cazelot raises three assignments of error: (1) that the trial court erred in admitting evidence of damages relative to the motorcycle lawsuit to apportion the settlement proceeds in the current proceedings, (2) that the trial court erred in finding that the settlement proceeds were not commingled, and (3) that the trial court erred as a matter of law in allocating the settlement proceeds to each party for their damages sustained in the motorcycle accident.

## DISCUSSION

**Interlocutory Judgment:**

From a review of the instant judgment on appeal, we conclude that it is an interlocutory judgment. The judgment appealed arises from proceedings to partition community property. This Court interprets the hearing from which this judgment arises as being a bifurcated hearing on a single reimbursement issue, which was set to resolve the classification and valuation of the settlement proceeds but did not resolve all partition or reimbursement issues. It is a partial judgment, not included on the exclusive list of immediately appealable partial final judgments found in La.Code Civ.P. art. 1915(A). Instead, it is a partial judgment under La.Code Civ.P. art. 1915(B). *See Reynolds v. Reynolds*, 33,216 (La.App. 2 Cir. 5/10/00), 759 So.2d 295.

> When a court renders a partial judgment . . . as to one or
> more but less than all of the claims, demands, issues, or
> theories against a party . . . the judgment shall not

4

> constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

La.Code Civ.P. art. 1915(B)(1). No such designation and determination has been made in this case. Thus, we must dismiss the instant appeal as being taken from an interlocutory judgment.

However, this court has permitted appeals to be converted to writs if notice of appeal was taken within thirty days of the notice of judgment. *See Dupuis v. Avoyelles Par. Corr. Ctr.*, 17-999 (La.App. 3 Cir. 12/13/17), —So.3d—, 2017 WL 6347955; and *LeBlanc v. LeBlanc*, 05-212 (La.App. 3 Cir. 11/2/05), 915 So.2d 966. "[T]he decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts." *Stelluto v. Stelluto*, 05-74, p. 7 (La. 6/29/05), 914 So.2d 34, 39. The judgment in this case was signed on September 8, 2017, and mailed to counsel on September 11, 2017. The Motion and Order for Devolutive Appeal was filed on October 3, 2017, within the thirty-day deadline. Considering this case has already been fully briefed and orally argued by both parties, in the interest of justice, we deem the motion and order for appeal in this matter to be a timely request for the setting of a return date for the filing of a writ application. Accordingly, we grant the supervisory writ and render an opinion.

**Assignment of Error Number 1:**

Mr. Cazelot asserts on appeal that the trial court committed manifest error in admitting medical records and bills from the Tennessee motorcycle accident, as well as testimony regarding Ms. Cazelot's injuries, arguing they are parol evidence and res judicata. An appellate court determines whether the trial court's decision on res judicata is legally correct or incorrect. *Fogleman v. Meaux Surface Prot. Inc.*, 10-1210 (La.App. 3 Cir. 3/9/11) 58 So.3d 1057, *writ denied*, 11-712 (La.

5/27/11), 63 So.3d 995. A trial court's decision on the admission of parol evidence is reviewed for abuse of discretion. *Geer v. BP Am. Prod. Co.*, 14-450 (La.App. 3 Cir. 11/5/14), 150 So.3d 621, *writ denied*, 14-2558 (La. 2/27/15), 159 So.3d 1070. In support of his res judicata assertion, Mr. Cazelot merely states that "a valid compromise can form the basis of a plea of res judicata." We find no res judicata in the current case. "Except as otherwise provided by law, a valid and final judgment is conclusive between the **same** parties[.]" La.R.S. 13:4231 (emphasis added). The elements to consider when deciding a res judicata issue include whether:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Reed v. Cowboy's Western Store and Trailer Sales, Inc.*16-462, p. 18 (La.App. 3 Cir. 3/1/17), 214 So.3d 987, 998, *writ denied*, 17-559 (La. 5/19/17), 219 So.3d 1108. "[P]arties are the same when they appear in the same capacities in both suits." *Myers v. Nat'l Union Fire Ins. Co. of La.*, 09-1517, p. 7 (La.App. 4 Cir. 5/19/10) 43 So.3d 207, 211, *writ denied*, 10-2049 (La. 11/12/10), 49 So.3d 892; *see also Burguieres v. Pollingue*, 02-1385, p. 8 (La. 2/25/03), 843 So.2d 1049, 1054). The parties, who were both the plaintiffs in the federal suit, do not appear in the same capacities in this matter, which is ancillary to the parties' divorce.

Regarding his parol evidence argument, Mr. Cazelot asserts that the trial court should have only examined the four corners of the settlement contract, and that "the parol evidence rule protects litigants from having to prove, substantiate, or otherwise explain why a settlement was reached[.]" However, "[t]he parol

evidence rule applies only in cases where the cause of action is the enforcement of an obligation created by a writing. The parol evidence rule does not apply when the writing is collateral to the issue involved and the action is not based upon the writing." *Dawson v. Dawson*, 610 So.2d 917, 919 (La.App. 1 Cir. 1992) (citations omitted). The instant case is not one to enforce an obligation created by the settlement agreement. The settlement agreement created an obligation between the Cazelots and the defendants in the federal case: for the Cazelots to forgo their causes of action against the defendants in exchange for the defendants' obligation to pay $400,000.00. The classification of those proceeds in the current case is an issue collateral to the settlement of the parties' cause of action against the defendants in the federal case.

Additionally, La.Civ.Code art. 3078 states: "A compromise does not affect rights subsequently acquired by a party, unless those rights are expressly included in the agreement." As Ms. Cazelot asserts, the parties did not acquire the right to partition the community property until the legal regime was terminated. Additionally, both spouses may make a claim for reimbursement for separate property used for the benefit of the community once the community property regime is terminated. La.Civ.Code art. 2358. Therefore, we agree that Ms. Cazelot is entitled to have the settlement proceeds classified and valued for purposes of potential reimbursement, and to do so requires a determination of what injuries those proceeds were compensating. As the settlement agreement lacks any division of those funds, or any direction on how those funds were intended to be divided, parol evidence is necessary. Other courts have considered parol evidence to classify and divide a settlement agreement. *See Nesbitt v. Nesbitt*, 40,442 (La.App. 2 Cir. 1/13/06) 920 So.2d 326, *writ denied*, 06-720 (La. 6/2/06), 929

7

So.2d 1255; *Ramsey v. Ramsey*, 96-481 (La.App. 3 Cir. 10/9/96) 682 So.2d 797; and *Thomas v. Thomas*, 539 So.2d 1242 (La.App. 4 Cir. 1989).

Accordingly, we find no error in the trial court's decision to admit and consider testimony and evidence regarding the Tennessee motorcycle accident in order to divide the settlement proceeds between the Cazelots' injuries for the future purpose of resolving the parties' reimbursement claims.[3]

**Assignment of Error Number 2**:

In Mr. Cazelot's second assignment of error, he argues that the trial court was manifestly erroneous in finding that the settlement proceeds were the parties' separate and community property, instead of finding that the proceeds had been commingled, thereby becoming entirely community property. We note that Mr. Cazelot does not challenge the amounts in the classification of the settlement proceeds.

"The trial court's findings regarding the nature of the property is a factual determination which will not be disturbed absent manifest error." *Dawson*, 610 So.2d at 919. "The appellate court must determine not whether the trier of fact was

---

[3] The current judgment on appeal is from a hearing that was a bifurcation of the reimbursement portion of a partition proceeding—not a trial of traverses, despite the language in the judgment erroneously stating otherwise. We find no error in the trial court's assignment of value to each classification. In order to classify the funds in a useful manner, the trial court necessarily had to assign value to each classification based on the evidence presented. Merely stating that it found the funds to be partially community property and partially the separate property of each spouse would be a waste of judicial resources and unhelpful to the parties. Our opinion should not be seen to support piecemeal determination of assets and liabilities at a trial of the traverses. We note that if this had been a trial of the traverses, the valuation would have been improper. *See* La.R.S. 9:2801(A)(b)(2) and *Williams v. Williams*, 06-2491 (La.App. 1 Cir. 9/14/07), 970 So.2d 633.

> This statute envisions two possible trials: the first being the preliminary trial of the traverses and the second later trial being the trial on the merits whereupon the assets will be valued and allocated and an accounting rendered.
> In specifying this procedure, the legislature intended that the assets be valued upon the occasion of the trial on the merits[.]

*Williams*, 970 So.2d at 638.

8

right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety." *Nesbitt*, 920 So.2d at 332.

It is presumed in Louisiana that "[t]hings in the possession of a spouse during the existence of a" community property regime are "community, but either spouse may prove that they are separate property." La.Civ.Code art. 2340. The classification of compensation for personal injury damages received during the existence of the community as either community or separate property is specifically addressed by La.Civ.Code art. 2344:

> Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
>
> Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.

Under La.Civ.Code art. 2344, the trial court must determine what portion of compensation for personal injury damages are general damages, and thus separate property, or special damages, which may be either separate or community property. *See Nesbitt*, 920 So.2d 326; *Ramsey*, 682 So.2d 797; and *Thomas*, 539 So.2d 1242. However, if

> separate funds are mixed or co-mingled with community funds to the extent that the separate funds are no longer capable of identification, and it is **impossible** to establish what part of the funds belongs either to the separate estate or to the community, then all of said funds are regarded as belonging to the community.

*Gregory v. Gregory*, 223 So.2d 238, 244 (La.App. 3 Cir. 1969) (emphasis added).

9

Mr. Cazelot asserts that the settlement proceeds were commingled and, therefore, all community property. Thus, he argues that the trial court's classification of the proceeds as separate and community property was manifestly erroneous. The first circuit in *Ellithorp v. Ellithorp*, 509 So.2d 178 (La.App. 1 Cir. 1987), addressed the same issue and found no manifest error in the trial court's judgment, which divided the settlement funds despite their deposit into a community checking account. Although the settlement proceeds in *Ellithorp* were specifically allocated between Mr. Ellithorp's loss of income, his pain and suffering, and Ms. Ellithorp's loss of consortium in the settlement document, the trial court addressed whether the funds were sufficiently commingled, all becoming community property, when they were deposited into a community account and used by both parties. On appeal, the appellate court noted:

> The characterization of funds as either community or separate, including the personal injury settlement proceeds which were deposited into the pre-existing community checking account and which quickly passed through it, was addressed by the trial court's taking into account the numerous bank statements and cancelled checks, as well as Kevin's lengthy request for admissions relating to deposits and expenditures.

*Id*. at 181. The appellate court found no error in the trial court's consideration of the community account balance and withdrawals to trace the settlement funds and "uncommingl[e]" the proceeds "from the exceedingly sparse community funds in the community checking account." *Id*. at 182.

On the other hand, Mr. Cazelot cites this court's opinion in *Cason v. Cason*, 564 So.2d 808 (La.App. 3 Cir. 1990), for the proposition that separate funds obtained through a personal injury suit, deposited in a joint account and used indiscriminately so that they are no longer susceptible of identification, are

10

considered community property. In *Cason*, 564 So.2d at 813, this court reversed the trial court and concluded that the separate funds were "no longer susceptible of identification." Instead, "[a]ll monies received were treated the same during the three and one-half years the community continued to exist after their receipt" and for those years, "all funds were treated indiscriminately." *Id*. at 814. Therefore, because this court was "unable to determine how much, if any, of those funds remain[ed,]" this court found "that, because of extensive comingling, all settlement funds which remain[ed]" belonged to the community. *Id*.

We find that the case currently before us is more akin to *Ellithorp* than *Cason*. The Cazelots were both named plaintiffs in the motorcycle personal injury suit. A lump sum settlement was agreed upon and paid to the Cazelots, which funds were then deposited into the Cazelots' joint checking account. The trial court listed all checks paid out of the joint account following each settlement deposit, most of which were not typical of the Cazelots' spending habits. Additionally, the majority of the checks written following the settlement could not have been funded with the Cazelots' typical monthly deposits because the checks were for significantly more money than the Cazelots' monthly income. Finally, each check includes a memo regarding the purpose for which it was written.

Specifically, the trial court stated:

> The total for all of the expenditures listed above in (a) through (o) is the sum of $150,055.69. The record further supports a finding that after deducting the checks referenced above from the joint account, along with checks for daily living expenses in August 2012, the account had a balance of $15,223.05. This balance is considered by the trial court to be attributed to the settlement monies concerned as the balances for the same account [prior to the settlement income] . . . were meager and less than $200 for each month. This accounts for $165,278.74 of the total net settlement funds deposited in

11

the sum of $206,202.13. Plaintiff's trial testimony is credible and supports the finding by the court that the difference in these figures of $40,923.39 was apparently expended by the parties on living expenses.

As in *Ellithorp*, and unlike *Cason*, the settlement proceeds passed quickly through the community account and purchases thereafter are traceable to the settlement proceeds. The settlement proceeds were received in April 2012. By October 2012, the Cazelots' bank account appeared to be back to its typical, pre-settlement deposits, withdrawals, and ending account balance of $200.00. As in *Ellithorp*, the Cazelots issued large checks from the joint account in the immediate months after the settlement proceeds were received. Accordingly, we find that the trial court was not manifestly erroneous in determining the settlement proceeds here were not commingled and instead maintained their separate identity as either separate or community property.

**Assignment of Error Number 3:**

In his third assignment of error, Mr. Cazelot argues that the court incorrectly applied La.Civ.Code art. 2344, finding that it compelled the court to divide the settlement proceeds to each party. We find no merit to this assignment of error.

The parties moved for the former community property to be partitioned, and both made claims for reimbursement. The trial court has a duty to partition the former community property under La.R.S. 9:2801. Additionally, both spouses are entitled to make a claim for reimbursement for separate property used for the benefit of the community. La.Civ.Code art. 2358. To adjudicate these claims, the court must determine whether the settlement proceeds are community or separate property by considering whether Ms. Cazelot overcame the presumption of community property and proved the proceeds were separate property. La.Civ.Code

art. 2340. The trial court, therefore, properly relied on La.Civ.Code art. 2344, which is instructive on the classification of damages due to personal injury. While La.Civ.Code art. 2344 states damages due to personal injury are separate property, it carves out an exception for "the portion of the damages attributable to expenses incurred by the community as a result of the injury," and "compensation of the loss of community earnings" prior to termination of the community property regime, which are instead community property. Therefore, because the settlement proceeds were not divided, the trial court was required to determine what portion of the settlement proceeds were attributable to medical expenses, loss of income, and general damages in order for the court to adjudicate the parties' partition and reimbursement claims.

Additionally, Mr. Cazelot argues that the trial court incorrectly relied on *Ramsey*, 682 So.2d 797, in support of the court's duty to divide the proceeds. Mr. Cazelot argues *Ramsey* and "other cases citing Louisiana Civil Code article 2344 concern a division of settlement funds obtained by *one* spouse into separate and community aspects[.]" However, while the *Ramsey* court did not address the commingling issue asserted by Mr. Cazelot in his second assignment of error, it did address the mixed nature of personal injury damages and the need to divide the funds as either separate or community. Specifically, the *Ramsey* court stated:

> We, therefore, hold that the fact that the funds in the instant case were not divided at the time of the settlement did not effect [sic] the mixed nature of the funds nor did it cause the funds to be commingled at that time. It is sufficient to say that the funds could have been equitably divided into loss of earnings and other general damages at the time of the settlement.

*Id*. at 800. While only Mr. Ramsey was injured, Ms. Ramsey intervened in the suit three years after it was filed, and the defendant filed an exception of prescription to

13

her claim. However, the case was settled before the exception of prescription was resolved. Additionally, other Louisiana cases have also involved the division of funds obtained by both spouses citing La.Civ.Code art. 2344, although they involved one spouse who was in an accident, and the other spouse who asserted general damages for loss of consortium.

For instance, in *Nesbitt*, 920 So.2d 326, the appellate court affirmed the trial court's division of settlement proceeds in partitioning the parties' community property. In *Nesbitt*, the husband was involved in a bicycle accident prior to the parties' divorce. The parties filed suit to recover damages from that incident, alleging the husband's damages for pain and suffering, as well as the loss of his earnings, and the wife's claim for loss of consortium. The suit was settled for a lump sum of $525,000.00. Mr. Nesbitt argued the entire settlement, with the exception of a smaller amount for Ms. Nesbitt's loss of consortium claim, was to compensate him for his pain and suffering. The trial court considered evidence from Mr. Nesbitt's CPA and evidence of the toll the accident took on Ms. Nesbitt. On appeal, the appellate court found no manifest error in the trial court's determination that $225,000.00 of the settlement was to compensate the parties for loss of income and $50,000.00 was to compensate Ms. Nesbitt for her loss of consortium, making the remainder of the settlement the compensation for Mr. Nesbitt's pain and suffering.

The fourth circuit in *Thomas*, 539 So.2d 1242, also determined the community property portion of a lump sum settlement that was not divided into specific damages. The fourth circuit stated: "Since the settlement was not broken down into categories of past lost income, future lost income, or general damages,

14

we must make some assumptions to equitably resolve this case" before dividing the settlement into categories for damages. *Id*. at 1245.

Accordingly, we find that the trial court had a duty to divide the settlement proceeds and classify the funds as separate or community property so it could adjudicate the parties' partition and reimbursement issues. We find no merit to Mr. Cazelot's assignment of error three.

However, we do find a typographical error in the amount designated as compensation for Ms. Cazelot's lost wages during the community property regime. The record supports the trial court's Written Reasons for Ruling, which calculated Ms. Cazelot's lost wages as $42,240.00. The judgment, however, states Ms. Cazelot's lost wages totaled $42,120.00. Therefore, we amend the judgment to reflect that the compensation from the settlement for Ms. Cazelot's lost income during the marriage is $42,240.00.

It is worth noting that although we find no manifest error in the trial court's classification and valuation of the settlement proceeds, we find it necessary to address the effect of the judgment considering our findings herein. The trial court not only classified portions of the settlement proceeds as either community property or separate property, but it also declared certain sums as "community reimbursement" and proceeded to seemingly partition the "community reimbursement" evenly between Mr. Cazelot and Ms. Cazelot. It appears the trial court did not go so far as to award the parties any part of the community property, but merely partitioned the community funds to use at the next partition hearing. To the extent the judgment meant to award the parties any money, doing so would be premature because no allocation of assets, equalizing payments, or reimbursement

awards can be calculated until after the partition hearing. *See* La.R.S. 9:2801 and *Arterburn v. Arterburn*, 15-22 (La.App. 3 Cir. 10/7/15), 176 So.3d 1163.

Additionally, to the extent the judgment partitions the community property portion of the settlement funds, such partition is also incorrect as those funds were not an asset of the former community property regime at the time it was terminated. While it may have been necessary for the trial court to determine what amount of the settlement proceeds was community property in order to also determine the portion that was to compensate the parties for their general damages, and therefore separate property, those community property funds were spent during the marriage. Therefore, $46,324.98[4] of the settlement proceeds, which were classified as community property, were not an asset of the community property regime at the time the regime was terminated and are not an asset to be partitioned at this time. *See* La.R.S. 9:2801(A)(4)(A) (emphasis added) ("The court shall value the assets *as of the time of trial* on the merits, determine the liabilities, and adjudicate the claims of the parties.") Instead, the funds were used for the purchase of other assets or expenses. Therefore, the trial court could not partition these sums between the parties as it did. These community funds are not a disputed or determined asset of the former community property subject to traversal or partition.

The trial court continued to value $153,877.15 of the settlement funds as the separate property of Ms. Cazelot, and $6,000.00 as the separate property of Mr. Cazelot, and we find no error in that valuation and classification. However, the judgement's classification and valuation of the settlement funds does not entitle

---

[4] The total amount of the settlement proceeds which were classified as community property: $42,240.00 for Ms. Cazelot's lost income, $1,194.00 for Mr. Cazelot's lost income, and $2,890.98 for reimbursement of medical expenses.

16

each party to an award for reimbursement at this time. To succeed on a reimbursement claim, the claiming party must prove certain elements—namely the classification of the funds used and the purpose for which the funds were used. *See Arterburn*, 176 So.3d 1163. The current judgment merely classifies certain sums of the settlement proceeds as separate property. Based on the record, the settlement proceeds were spent during the community property regime. Therefore, both spouses are entitled to reimbursement if the funds classified as separate property were used to benefit the community. *See* La.Civ.Code arts. 2365 and 2367. Once the community has been partitioned, the valuations made in the current judgment can be used to define the parties' potential reimbursement claims, which they will have to prove at trial as explained by this court in *Arterburn*, 176 So.3d 1163. Accordingly, the current judgment can serve only to classify certain sums from the settlement proceeds as the separate property of each spouse. The portion of the judgment purporting to partition the funds classified as community property is reversed and remanded to the trial court for further proceedings in accordance with this opinion.

## CONCLUSION

Based on the foregoing reasons, we amend the trial court's judgment to reflect that the settlement proceeds compensating Joyce Cazelot for her lost income totals $42,240.00 and, thereafter, affirm as amended the classification and valuation of the settlement proceeds. Additionally, we reverse that portion of the judgment purporting to partition the funds classified as community property and remand to the trial court for further proceedings in accordance with this opinion. All costs of this appeal are assessed to Appellant, Wilfred A. Cazelot.

**APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; JUDGMENT REVERSED IN PART, AMENDED, AND AS AMENDED, AFFIRMED IN PART, AND REMANDED FOR TRIAL ON THE MERITS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.